NORMAN V. SWENSON, GEORGE C. SNYDER, FRANK O. SHERRILL, WILLIAM L. PENDER, JOHN R. PENDER, III, MARY ROGERS PENDER MURPHY, DORIS HARE WHITE, D. LACY KEESLER, S. DEWEY KEESLER, CARSON INSURANCE AGENCY, INC., A. H. KIMBALL, OLIVIA BROWN THOMAS, HELEN BROWN KIMBALL, NELL V. BATES, ROSE DUPREE, ANN DUPREE KING, PAUL B. BEATTY, ROBERT L. TAYLOR, STANLEY E. EDLUND, PATRICIA A. EDLUND, SHARON S. STANDIFER, VIRGINIA T. JOHNSON, FRANCES M. VINSON, MATTIE S. GARDNER, ROBERT R. RHYNE, BETTY F. RHYNE, JAMES M. GILFILLIN, JOHN W. POWELL, REBECCA P. PITTMAN, T. F. MORGAN, GRACE E. MORGAN, MARIE DOWD LATIMER, AND JOHN D. KING, DERIVATIVELY IN THE RIGHT OF ALL AMERICAN ASSURANCE COMPANY, PLAINTIFFS v. CHAREST D. THIBAUT, JR., THOMAS H. CLARK, BEN F. THOMPSON, JR., GEORGE C. WIEMER, JR., ROBERT E. WIEMER, HERMAN TAYLOR, JR., TRAVIS E. NICHOLS, LELIER J. LELEUX, W. W. HAWKINS, J. MALCOLM DUHE, CLIFFORD C. COMEAUX, JR., J. ALFRED BEGNAUD, EMERY J. BARES, PAUL G. BACKUS, AND RUSSELL E. WALTON, DEFENDANTS AND ALL AMERICAN ASSURANCE COMPANY, BENEFICIAL PARTY

No. 7826SC78

(Filed 19 December 1978)

1. **Appearance § 1.1; Rules of Civil Procedure § 12— motion to disqualify attorneys—general appearance—waiver of jurisdiction defense**

    By filing motions to disqualify plaintiffs' attorneys before raising any jurisdictional defenses, defendants made a general appearance and waived their defense of lack of jurisdiction over the person. G.S. 1A-1, Rule 12; G.S. 1-75.7.

2. **Constitutional Law § 24.7; Process § 9— domestic corporation—nonresident director—service of process—long-arm statute**

    Sufficient contacts existed between North Carolina and a nonresident director of a domestic corporation so as to render constitutional the exercise of

long-arm jurisdiction over the nonresident director pursuant to G.S. 55-33 in a shareholders' derivative action based on alleged malfeasance in office by the director.

**3. Corporations § 6— defense of business judgment—when unavailable**

The defense of business judgment is not available to a corporation where a majority of its directors are implicated in the allegations of the suit, as it is a defense on the merits which may properly be interposed only by the directors and management of the corporation unless the corporation is a real defendant as to some meritorious issue in the· suit.

**4. Corporations § 6— stockholders' derivative action—defense by corporation**

In a derivative action brought by minority shareholders to enforce rights or to seek redress accruing to the corporation, the corporation will be deemed for purposes of the litigation to be aligned as a party plaintiff, except to the extent that the corporation is an actual defendant as to an issue in the action, although for purposes of form it is designated as a nominal defendant. Accordingly, the corporation ordinarily may not defend itself against the derivative action on the merits but must limit its defenses, if any, to certain pretrial matters proper to it, and dismissal will lie against the corporation when it seeks to extend its defenses beyond those areas in which it may properly conduct them.

**5. Corporations § 6— stockholders' derivative action—demand on board of directors—defendants as majority of board**

Minority shareholders were not required to make a demand upon the board of directors of a corporation before bringing a derivative action against officers and directors of the corporation where they alleged that defendants constituted a majority of the board of directors at the time of the transactions complained of and at the time the derivative action was instituted. Furthermore, it appears from the complaint that plaintiffs did make demand upon the board of directors to obtain the action they desired and that this demand was overwhelmingly refused, and the failure of plaintiffs to be specific in alleging such demand as required by G.S. 55-55(b) does not require dismissal since they were not required to make any demand at all.

**6. Corporations § 14; Parties § 1.2— action against directors—malfeasance—other parties to malfeasance not necessary parties**

Where, in an action against directors of a corporation for malfeasance in office, the trial court struck from the complaint prayers for rescission of the transactions constituting the malfeasance, the other parties to those transactions will not be legally bound or affected by any decree or judgment rendered in the action against the directors and are not necessary parties thereto.

**7. Corporations § 14— action against directors—malfeasance—allegations of damages**

In an action against corporate directors for malfeasance in office, the allegations of damages were not speculative and uncertain but were sufficiently specific to give fair notice to defendants of the events and transactions involved.

Swenson v. Thibaut

**8. Corporations § 14; Insurance § 1; Abatement and Revival § 8— insurance company—shareholders' action against directors—pending rehabilitation proceeding**

The superior court was not deprived of subject matter jurisdiction in a derivative action by shareholders of an insurance company against directors of the company because of the trial court's retention of the cause in a prior proceeding to rehabilitate the insurance company, since there was no identity of parties, subject matter and issues in the two actions.

**9. Corporations § 14— stockholders' action against directors—defense of good faith business judgment**

In a derivative action brought by shareholders of a corporation against directors of the corporation for malfeasance in office, the trial court properly refused to grant summary judgment for defendant directors on the ground that the action of a majority of the board of directors in declining to sue themselves and in deciding to resist the derivative action claims against them was a good faith business judgment made in the best interests of the corporation and its shareholders where the evidence before the court showed: (1) a group of the individual defendants constituted a majority of the board of directors at the time of the events complained of and presently constitutes a majority of the board; (2) the seven purportedly disinterested directors were nominated and elected by this group; (3) a litigation evaluation committee, consisting of three purportedly disinterested directors, was appointed by the board to assess potential claims the corporation might have against a number of individuals, including defendants, but this committee was only an advisory group and was not vested with the plenary powers of the full board; (4) the decision to resist the derivative action against defendant directors was made prior to the formation of the litigation evaluation committee; and (5) no independent judgment was at any time exercised by the litigation evaluation committee in regard to the derivative action claims.

**10. Attorneys at Law § 10— power of court to discipline attorneys**

The inherent power of a court to regulate and discipline attorneys practicing before it is co-equal and co-extensive with the statutory powers to discipline an attorney granted to the North Carolina State Bar.

**11. Attorneys at Law § 10— disciplining of attorney by court—no exclusion of action by State Bar**

Since the interests of a court and of the North Carolina State Bar in disciplining an attorney are not always identical, the action of a court in disciplining or disqualifying an attorney practicing before it is not in derogation or to the exclusion of similar action by the State Bar.

**12. Attorneys at Law § 10— power of court to discipline attorney—no limit by Code of Professional Responsibility**

A court's inherent power to discipline an attorney is not limited or bound by the technical precepts contained in the Code of Professional Responsibility as administered by the State Bar.

13. **Attorneys at Law §§ 3, 12; Corporations § 14— representation of insurance company in rehabilitation—subsequent representation of stockholders in derivative action—use of confidences—standing to object**

    A law firm which represented an insurance company in securing information to bring the insurance company back into compliance with North Carolina law and in rehabilitation proceedings was not prohibited from representing plaintiff minority shareholders of the company in a derivative action against the company's directors by Canon 4 of the Code of Professional Responsibility, which prohibits the improper use of confidences and secrets of a client, since the law firm's representation of the insurance company, whether actually or derivatively, has at all times been adverse to the interests of management and the directors and concurrent with the interests of the insurance company as a corporate entity and the interests of the minority shareholders. Furthermore, the defendant directors have no standing to assert the privilege under Canon 4, since the privilege must be asserted by the corporate client, and the corporation has no standing to assert the privilege in this derivative action since the corporation must be treated as a party plaintiff and may not assert the privilege against itself.

14. **Attorneys at Law § 7.1— stockholders' derivative action—stock as fee—no improper interest in subject matter of litigation**

    A fee arrangement whereby a law firm would receive a one-third interest in the shares it was representing in a derivative action by minority shareholders of a corporation against directors of the corporation did not constitute an acquisition by the law firm of an improper interest in the subject matter of the litigation in violation of Canon 5 of the Code of Professional Responsibility.

15. **Attorneys at Law § 12— representation of stockholders in derivative action—no improper solicitation of clients**

    A law firm did not improperly solicit clients to be plaintiffs in an action by minority stockholders of a corporation against directors of the corporation where several of the minority stockholders conferred with an attorney in the firm with reference to action to protect their interests in the corporation, one stockholder proposed to pay for legal services with shares of the corporate stock, the attorney indicated that representation of at least 50,000 shares would be needed to cover the anticipated expenses of litigation and to indicate sufficient representation of minority stockholder interest, the stockholders communicated with other minority stockholders, and suit was filed after one stockholder assured the attorney that he had received support from enough stockholders to constitute 50,000 shares.

16. **Attorneys at Law § 3— motion to disqualify attorneys—assumption court disregarded incompetent evidence**

    Where the record does not indicate that the trial judge clearly relied on incompetent evidence in denying defendant's motion to disqualify plaintiff's counsel, the appellate court will assume that he disregarded any incompetent evidence in the record in reaching his conclusions.

17. **Corporations § 14— stockholders' action against directors—malfeasance—corporation's advancement of legal fees**

The provisions of G.S. 55-30, governing transactions between interested directors and their corporations, did not prohibit a corporation's advancement of legal fees under G.S. 55-19(d) to a director being sued in a derivative action by minority shareholders for malfeasance in office.

18. **Corporations § 14— action against director—corporation's advancement of legal fees—meaning of "undertaking" for repayment**

The "undertaking" required by G.S. 55-19(d) for the repayment of legal fees advanced by a corporation to a director if the director is unsuccessful in his defense means only a written promise, not made under seal, given as security for the performance of some act as required in a legal proceeding.

APPEAL by plaintiffs from *Friday, Judge*. Order denying injunctive relief entered 30 June 1977 in Superior Court, MECKLENBURG County.

Appeal by defendants Thibaut, Comeaux, Clark, Thompson, Nichols, Leleux, Hawkins, Duhe, Begnaud, Bares, Walton, and Taylor from *Friday, Judge*. Order denying motions to dismiss for lack of personal jurisdiction entered 30 June 1977 in Superior Court, MECKLENBURG County.

Appeal by defendants All American Assurance Company, Thibaut, Comeaux, Clark, Thompson, Nichols, Leleux, Hawkins, Duhe, Begnaud, Bares, Backus, Walton, and Taylor from *Friday, Judge*. Order denying motions to disqualify plaintiffs' attorneys entered 30 June 1977 in Superior Court, MECKLENBURG County.

Appeal by defendants All American Assurance Company, Thibaut, Comeaux, Clark, Thompson, Nichols, Leleux, Hawkins, Duhe, Begnaud, Bares, Backus, and Walton from *Friday, Judge*. Order denying motions for dismissal pursuant to Rule 12(b) of the North Carolina Rules of Civil Procedure entered 2 July 1977 in Superior Court, MECKLENBURG County.

The four appeals were consolidated for oral argument and heard in the Court of Appeals 24 October 1978.

Defendant Robert E. Wiemer gave notice of appeal but has not perfected or filed any appeal. Defendant George C. Wiemer, Jr., did not give notice of appeal from any of the above-cited orders of Judge Friday.

*Cansler, Lockhart, Parker & Young, by Thomas A. Lockhart and Joe C. Young, for plaintiff appellants.*

*Helms, Mullis & Johnston, by E. Osborne Ayscue, Jr., for respondent appellees Thomas A. Lockhart and Joe C. Young.*

*Stern, Rendleman, Isaacson & Klepfer, by Robert O. Klepfer, Jr., and Arthur A. Vreeland, for defendant appellant All American Assurance Company.*

*Jordan, Wright, Nichols, Caffrey & Hill, by William D. Caffrey and G. Marlin Evans for defendant appellants Clark, Thompson, Nichols, Leleux, Hawkins, Duhe, Begnaud, Bares, Backus and Walton.*

*Bryant, Groves & Essex, by Alfred S. Bryant for defendant appellants Thibaut and Comeaux.*

*Sanford, Cannon, Adams & McCullough, by Robert W. Spearman and H. Hugh Stevens, Jr., for defendant appellant Herman Taylor.*

MARTIN (Robert M.), Judge.

This is an action by thirty-three minority shareholders of All American Assurance Company (hereinafter "All American"), brought derivatively in the name of All American against the named defendants who are past and present officers and directors of All American.

All American is a North Carolina corporation with its registered office in Charlotte, North Carolina, and executive offices in Baton Rouge, Louisiana. It was formed as a corporate entity by the merger of All American Assurance Company (a Louisiana corporation) into Pyramid Life Insurance Company, a North Carolina corporation with headquarters in Charlotte, North Carolina. At the time of the several events complained of in this action, sixty-four percent (64%) of All American's capital stock was owned by Republic Securities Corporation, a Louisiana corporation. At the time of the several events complained of, there was substantial identity of ownership and control of both All American and Republic Securities Corporation.[1] All transactions complained of occurred after the merger in 1972 and before the placing of All American into involuntary rehabilitation in 1975.

---

1. The minutes of the annual shareholders meeting of All American held 25 April 1975 indicates the voting and ownership of All American stock:

Swenson v. Thibaut

The complaint alleges numerous breaches of the fiduciary duty owed to All American by the defendants. The allegations of

| Name | Number of Shares |
|---|---|
| Republic Securities Corporation | |
| Robert E. Wiemer, Secretary-Treasurer | 1,017,819 |
| First Louisiana Fund, Incorporated | |
| Robert E. Wiemer, President | 3,813 |
| Republic Group, Incorporated | |
| Robert E. Wiemer, Secretary-Treasurer | 1,067 |
| Republic Title Guaranty Company, | |
| Robert E. Wiemer, Secretary-Treasurer | 8,000 |
| All American Retirement Plan, | |
| Emery Bares, Trustee | 5,800 |
| Gary J. Anderson, C.L.U. | 3,941 |
| Paul G. Backus | 469 |
| Emery Bares, C.L.U. | 469 |
| J. Alfred Begnaud | 3,897 |
| Thomas H. Clark, C.L.U. | 11,977 |
| Clifford C. Comeaux, Jr., D.D.S. | 2,569 |
| J. Malcolm Duhe | 590 |
| W. W. Hawkins | 4,799 |
| Lelier J. Leleux | 3,116 |
| Travis E. Nichols | 938 |
| Charest D. Thibaut, Jr. | 6,325 |
| Ben F. Thompson, Jr., M.D. | 1,000 |
| Russell E. Walton, C.L.U. | 478 |
| George C. Wiemer, Jr. | 500 |
| Robert E. Wiemer | 5,208 |

The shares listed above constitute approximately 68.4% of the total voting shares of All American. (Exhibits to the record on appeal, Vol. IV, pp. 225-226.)

The summary of common stock ownership of Republic Securities Corporation as of 15 September 1974 shows the following shareholders as owning the indicated percentages of Republic:

| NAME | # OF SHARES | % OF TOTAL |
|---|---|---|
| Gary J. Anderson | 246,645.4 | 13.82 |
| Charest D. Thibaut, Jr. | 683,253.6 | 38.28 |
| Thomas Clark | 19,600 | 1.10 |
| Robert E. Wiemer | 69,600 | 3.90 |
| George C. Wiemer | 33,000 | 1.84 |
| Ben F. Thompson | 18,000 | 1.01 |
| Travis E. Nichols | 12,000 | .67 |
| Clifford C. Comeaux | 85,667 | 4.80 |
| Mrs. Clifford C. Comeaux | 35,862 | 2.00 |
| Clifford Charles Comeaux, Jr. | 6,000 | .34 |
| First Williston Fund, Ltd. | | |
| (owned by Anderson and Thibaut) | 316,800 | 17.75 |

The listed shares represent 85.51% of the ownership of Republic Securities Corporation. (Exhibits to the record on appeal, Vol. V, p. 278.)

The minutes of the annual shareholders' meeting of All American Assurance Company held 25 April 1975 listed the following individuals as having been elected directors:

| | | |
|---|---|---|
| Gary J. Anderson, CLU | C. C. Comeaux, Jr., DDS | Charest D. Thibaut, Jr. |
| Paul G. Backus | J. Malcolm Duhe | B. F. Thompson, Jr., MD |
| Emery Bares, CLU | W. W. Hawkins | Russell E. Walton, CLU |
| J. Alfred Begnaud | Lelier J. Leleux | George C. Wiemer, Jr. |
| Redfield E. Bryan, Jr., MD | Travis E. Nichols | Robert E. Wiemer |
| Thomas H. Clark, CLU | Herman Taylor, Jr. | |

(Exhibits to the record on appeal, Vol. IV, p. 227.)

The board of directors of Republic Securities Corporation as of 30 April 1975 consisted of:

**Swenson v. Thibaut**

the plaintiffs,[2] if proved to be true, would establish a pattern of self-dealing and negligent acquiescence on the part of the defendants amounting to a "looting" of the assets belonging to solvent All American for the benefit of the essentially insolvent Republic Securities Corporation and for the benefit of certain other enterprises controlled in part or wholly by various of the named defendants.[3]

As a result of the mishandling of company finances by management and the Board of Directors of All American, All American was placed in involuntary rehabilitation by order of Judge Harry C. Martin 4 November 1975, pursuant to a petition

---

| | |
|---|---|
| Charest Thibaut, Jr. | Travis Nichols |
| Gary J. Anderson, Jr. | Emery Bares |
| Robert E. Wiemer | Tom Clark |
| Ben F. Thompson | |

(Exhibits to the record on appeal, Vol. V, p. 258.)

Gary J. Anderson, who was President of both All American and Republic Securities Corporation and a shareholder of both corporations, was not made a party defendant to this action. The reasons for this will be discussed *infra*.

2. The details of the allegations are not germane to our consideration at this point. We will, however, summarize them briefly by way of illustration:

1) the purchase by All American in March of 1975 of 18,000 shares of common stock in the Bank of St. James and Trust Company, a Louisiana bank, at a price of $40 per share at a time when the shares were not possibly worth more than $20 per share. The St. James shares were purchased from a nominee of Republic Securities Corporation (whose relation to All American is detailed in note 1, *supra*) and the purchase was not ratified by any disinterested director.

2) the purchase in May of 1975 of 5,000 shares of common stock in the Bank of St. Charles and Trust Company, at prices ranging from $51.75 to $55.395 per share. The shares allegedly were purchased from a nominee of Republic Securities Corporation for the benefit of Republic and were virtually worthless at the time of purchase. This transaction was not approved by any disinterested director of All American.

3) All American issued various commitment letters to purchase shares of the Bank of St. Charles and Trust Company at $60 per share. These letters were issued to one Remy Gross, a nominee of Republic Securities Corporation, and appear to have been intended to serve as guarantees for a $1.5 million note made by Republic and upon which note several of the defendants were personally liable as guarantors. The St. Charles stock had no market value at this time. These transactions were not approved by any disinterested director of All American.

4) All American was caused to make loans to McIngvale Associates General Agency, Inc. (hereinafter "MAGA") totaling $1.3 million at a time when certain of the defendants were pecuniarily interested in MAGA. The loan was secured only by a second mortgage on California property of doubtful value. These transactions were not approved by any disinterested directors.

5) All American was caused to make unsecured loans to Republic Securities Corporation at no interest totaling $431,375 at a time when Republic was insolvent. These transactions were not approved by any disinterested director.

6) All American was caused to issue a commitment to the National Bank of Commerce, Dallas, Texas, for the purchase of $2.25 million debentures of MAGA.

7) All American was caused to issue a commitment letter to the Louisiana National Bank for a secondary take-out of a March 1975 note of George C. McIngvale, Jr. in the principal amount of $1,290,838.95.

The various loans, purchases and commitments enumerated total not less than $9,349,375.00.

3. Thibaut and Anderson were pecuniarily interested in the Bank of St. Charles and Trust Company and the Bank of St. James and Trust Company. Defendants Thibaut and Herman Taylor and also Gary J. Anderson were pecuniarily interested in MAGA, Inc.

of John R. Ingram, Commissioner of Insurance, filed in accordance with Article 17A of Chapter 58 of the North Carolina General Statutes and which alleged that All American was insolvent and that the future unrestricted operation of the company by the present management would be hazardous to the shareholders and policyholders of the company. The company was operated in rehabilitation under the supervision of the court, and two of the named defendants party to this action (Charest D. Thibaut, Jr. and Robert E. Wiemer) were removed as officers and directors of All American, as was Gary J. Anderson, former president of the company. Republic Securities Corporation unconditionally transferred its 1,011,610 shares of capital stock of All American (representing 65% of the outstanding shares) to the American Bank and Trust Company, which bank was foreclosing an indebtedness of Republic owed to American Bank & Trust. American Bank and Trust agreed to maintain All American's statutory capital and surplus at $2.5 million through 31 December 1976. Consequently, All American was released from rehabilitation by order of Judge Martin (dated 7 May 1976 and filed 10 June 1976) under certain conditions as quoted below in pertinent part:

> 1. The Court [Judge Harry C. Martin] retains jurisdiction over all parties to this action for such further orders as may be necessary;

> \*   \*   \*

> 9. All American shall vigorously prosecute, pursue and defend all rights, claims and defenses available to it with regard to the causes and conditions leading to the necessity for All American going into rehabilitation as enumerated in the Court's Order of November 18, 1975, and All American shall report quarterly to the North Carolina Commissioner of Insurance and this Court on the status of these separate causes and conditions;

Plaintiffs allege that All American, by its present board of directors and management, has failed to comply with the conditions of paragraph 9 set out above. In support of this allegation the plaintiffs have adduced evidence tending to show that at the

substitute annual shareholders' meeting of 20 October 1976 held in Baton Rouge, Louisiana, a resolution was introduced by minority shareholders calling upon the board of directors to make immediate demand upon the directors responsible for the various transactions which led to All American's being placed in involuntary rehabilitation, so as to require those directors to reimburse All American for any losses their actions had cost the company. This resolution was overwhelmingly defeated by the shareholders present (67,316 shares voting for; 1,274,769 against) with all of the present defendants voting their stock against the resolution.

The law firm of Cansler, Lockhart, Parker & Young (hereinafter "CLP&Y"), by its partners Thomas Ashe Lockhart and Joe C. Young (hereinafter "Lockhart" and "Young") had been retained 30 July 1975 by All American at the instigation of Gary J. Anderson, President of All American, to specially represent All American in the matters concerning compliance with North Carolina law. The North Carolina Department of Insurance was investigating All American at this time to see if the company was in compliance with the provisions of North Carolina law governing insurance companies. It appears from the record and Judge Friday found that Lockhart's role as counsel to All American was limited to the scope of the rehabilitation proceeding and the investigations that were necessary to secure the information required to bring All American back into compliance with North Carolina insurance laws. CLP&Y had been general counsel for Pyramid Insurance Company up to and through the merger with All American of Louisiana, but that relationship was terminated at the conclusion of the merger in 1972. Except for isolated items of work, CLP&Y was not employed again by All American until the action of the board of directors 30 July 1975. At the termination of rehabilitation, All American discharged CLP&Y as their attorneys, indicating that they would use local Louisiana counsel for the remainder of the post-rehabilitation business.

Several of the plaintiffs, including Norman Swenson, former president of Pyramid Insurance Company, conferred with CLP&Y July 14-15, 1976, in reference to any action they as minority shareholders might take to protect their interests, and Swenson employed CLP&Y on 16 July 1976 to represent him. One of the plaintiffs proposed to pay for legal services rendered by CLP&Y with shares of All American, which were at that time worth from

$.50 to $1.00 per share. Lockhart indicated that representation of at least 50,000 shares would be needed to cover the anticipated expenses of the litigation then being considered and to indicate a sufficient representation of minority shareholder interests. Swenson and others of the plaintiffs proceeded to communicate with other minority shareholders in the area. Upon Swenson's assurance that he had received support from enough shareholders to constitute 50,000 shares, Lockhart filed suit to enjoin the annual shareholders' meeting. (This particular matter was before this court in *Swenson v. All American Assurance Co.*, 33 N.C. App. 458, 235 S.E. 2d 793 (1977).) Several of the plaintiffs, including Swenson, continued to communicate with minority shareholders, seeking proxies to take to the substitute annual shareholders' meeting held 20 October 1976. After the defeat of the resolution introduced by the minority shareholders as discussed above, plaintiffs filed this derivative action 30 December 1976 with All American as beneficial party.

Defendant Herman Taylor timely filed a motion for extension of time and then filed a motion to dismiss for lack of jurisdiction. Having thus preserved his right to contest jurisdiction, he proceeded to make discovery and interpose other motions and defenses appropriate to the action. All American filed motions to disqualify CLP&Y from representing the plaintiffs, to dismiss pursuant to various portions of Rule 12(b), North Carolina Rules of Civil Procedure, and to dismiss the action on the grounds of the business judgment rule. The other defendants filed motions to disqualify CLP&Y from representing the plaintiffs, followed by motions to dismiss for lack of jurisdiction and various motions to dismiss.

Plaintiffs filed a motion seeking to enjoin implementation of the action of the board of directors of All American authorizing advance payments of legal fees to the defendants who were then current members of the board. (Such authorization was made by the board at its meeting 3 February 1977, at which meeting it was initially decided that All American would "vigorously oppose and defend" the derivative action. Also at this meeting, and subsequent to the decision to resist the derivative action, the board appointed a committee of purportedly disinterested directors to be a "Litigation Evaluation Committee," whose function would be to assess the potential claims All American might have

against several individuals, including the individuals constituting a majority of the present board of directors, and to report back to the full board with its advice so that the full board could take action as it deemed appropriate.)

Judge Friday entered several orders regulating discovery on the issues raised by the motions, and held hearings and received briefs from counsel. By orders dated 30 June 1977 and 2 July 1977, he denied all of the motions of all parties, striking from plaintiffs' complaint those portions of the prayer for relief that requested relief inconsistent with the scope and nature of the derivative action. From these orders of Judge Friday, all parties appeal as indicated initially, bringing forward a record of 852 pages accompanied by 978 pages of exhibits and 370 pages of briefs by counsel, addressing 569 assignments of error.

I

[1] Because jurisdiction over parties is a threshold inquiry of any litigation, we begin our consideration of the instant case with the contentions of the individual directors that the superior court has no jurisdiction over them. All of the individual defendants except Herman Taylor, Jr., filed motions to disqualify CLP&Y as attorneys for plaintiffs before raising any jurisdictional defenses, so we will look first at the claims of this group.

These defendants were served pursuant to G.S. 55-33, which makes nonresident directors of a domestic corporation subject to the jurisdiction of the courts of this State, by mailing copies of the summons naming each such director a defendant to the North Carolina Secretary of State, who is deemed to have been constituted process agent by such director when he accepted a directorship in a North Carolina corporation. Upon receipt of such copies of summons, the Secretary of State proceeds to effect service in like manner as provided for foreign corporations under G.S. 55-146. No deficiency of process or failure to comply with statutory procedure is asserted by any of the defendants; they contend, rather, that the long-arm jurisdiction of G.S. 55-33 is unconstitutional as applied to them. We do not reach, however, any constitutional questions in reference to these defendants, as we find that they have waived their jurisdictional defenses by making general appearances in the action prior to their asserting any jurisdictional deficiencies.

G.S. 1-75.7 provides that courts of this State, having jurisdiction over the subject matter, may exercise jurisdiction over a person without serving a summons upon him if he enters a general appearance in the action. "[A] general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person." *In re Blalock*, 233 N.C. 493, 504, 64 S.E. 2d 848, 856 (1951). For the purposes of G.S. 1-75.7, a motion for extension of time in which to plead or otherwise answer will not constitute a general appearance; however, if the defendant by motion or otherwise invokes the adjudicatory powers of the court in any other matter not directly related to the questions of jurisdiction, he has made a general appearance and has submitted himself to the jurisdiction of the court whether he intended to or not. *See, e.g., In re Blalock, supra; Williams v. Cooper*, 222 N.C. 589, 24 S.E. 2d 484 (1943).

There is no counterpart to G.S. 1-75.7 in the Federal Rules of Civil Procedure; accordingly, were this action governed by the Federal Rules the individual defendants would not have waived their jurisdictional defenses merely by filing motions to disqualify plaintiffs' counsel. However, in North Carolina it is clear that Rule 12 of the Rules of Civil Procedure must be read in conjunction with G.S. 1-75.7. As the Court stated in *Simms v. Stores, Inc.*, 285 N.C. 145, 157, 203 S.E. 2d 769, 777 (1974),

Construing Rule 12 and G.S. 1-75.7 together, as obviously we must do since they are a part of the same enactment, *Fletcher v. Comrs. of Buncombe*, 218 N.C. 1, 9 S.E. 2d 606 (1940), it is apparent that Rule 12 did not abolish the concept of the voluntary or general appearance. On the contrary, as repealed G.S. 1-134.1 had done when it was enacted in 1951, Rule 12 eliminated the special appearance and, in lieu thereof, gave a defendant the option of making the defense of lack of jurisdiction over the person by pre-answer motion or by answer even though a defendant makes a general appearance when he files an answer. 5 Am. Jur. 2d, *Appearance* §§ 14, 16 (1962). However, as heretofore pointed out, after a defendant has submitted himself to the jurisdiction of the court by conduct constituting a general appearance, he may not assert

the defense that the court has no jurisdiction over his person either by motion or answer under Rule 12(b).

* * *

When the legislature used the term *general appearance* in G.S. 1-75.7, it used a term which had acquired a settled meaning through judicial construction, and that construction became a part of the law. In the absence of anything which clearly indicates a contrary intent, the legislature is presumed to have used the statutory term under consideration in its judicially established meaning. [Citations omitted.]

The motions made by the individual defendants (except Herman Taylor, Jr.) to disqualify the plaintiffs' counsel requested affirmative relief from the court and necessarily invoked the judgment of the court as to the issues raised. The jurisdictional defenses were not raised prior to the filing of these motions, and the motions were not grouped or joined with any jurisdictional motions.

Defendants have relied heavily upon *City of Durham v. Lyckan Development Corp.*, 26 N.C. App. 210, 215 S.E. 2d 814, *cert. denied* 288 N.C. 239, 217 S.E. 2d 678 (1975). We find, however, that their reliance is misplaced. In *Lyckan*, the City of Durham began a condemnation proceeding against property belonging to the development corporation. Funds were paid in to the Clerk of Superior Court for Durham County with a filing of the notice of taking. A purported service of process upon the president of the defendant corporation on 8 August 1972 was found by the trial court to have been invalid. The corporation filed answer asserting invalidity of service 20 August 1973; it had, however, on 23 August 1972 petitioned to withdraw the funds deposited with the clerk. Plaintiff had moved to strike the answer of defendant as not being timely filed. The trial court found that the corporation had not waived its defense in regard to invalid service of process by filing a petition for disbursement with the clerk, further that defendant's answer was timely filed, and denied plaintiff's motion to strike the answer. The prime concern in *Lyckan* was whether or not the answer would be stricken and plaintiff would have a default judgment, not whether the defendant was properly before the court. In fact, the defendant was arguing for the position that it *was* before the court. Unlike the

instant case, the purported service of process was totally invalid for physical defects, not because of any alleged constitutional or statutory defects. The evidence showed that at the time the president of the corporation was purportedly served with process, he was not even *in* the county where service was sought to be made. The declaration of taking had been filed, and a memorandum of action would have appeared in the Durham County Registry of Deeds, which obviously could serve to provide the defendant with actual notice of the pendent proceeding, without subjecting it to the court's jurisdiction. G.S. 136-105, as it was in effect at the time of this action, provided that a named defendant in a complaint and declaration of taking could apply to the court for disbursement of money deposited in the court, as a credit against just compensation and without prejudice to further proceedings in the cause, and that "the judge *shall*, [emphasis supplied] unless there is a dispute as to title, order" such disbursement without notice of the hearing to the Board of Transportation (now Department of Transportation). Absent a dispute as to title, the application for disbursement was not even a discretionary matter with the trial court; the defendant was entitled to disbursement as a matter of law. Therefore, it appears on the facts that in *Lyckan*, the motion for disbursement was not necessarily made in response to service of process; neither does it appear that any demand upon the adjudicatory function of the court was made (as was most definitely made by the instant motions to disqualify counsel), so that such motion arguably would not constitute a general appearance. We therefore find *Lyckan* wholly distinguishable on its facts and inapplicable to this case; to the extent that its holding appears to offer any conflict with our holding today we limit *Lyckan* to its very special facts. Likewise, the opinion of this Court in *Smith v. Express Co.*, 34 N.C. App. 694, 239 S.E. 2d 614 (1977) is of no comfort to these defendants as it is clear in that case that jurisdictional objections were made first and at all times subsequent were preserved by the defendants, a fact pattern markedly dissimilar to the one before us. As this Court observed,

> It seems to us that if, as here, a defendant promptly asserts his jurisdictional defense as his *first* step in the lawsuit, he has performed his duty in alerting the court and the other parties. His opponent can then attempt to correct

the jurisdictional difficulty or assume the consequences of his failure to do so. *Id.* at p. 698, 239 S.E. 2d at 617.

Accordingly, we find that defendants Thibaut, Clark, Thompson, Nichols, Leleux, Hawkins, Duhe, Comeaux, Begnaud, Bares, Backus and Walton waived service of process by entering general appearances in this action by filing motions to disqualify plaintiffs' counsel, and their assignments of error on this question are overruled.

[2] The appeal of Herman Taylor, Jr., however, presents a completely different question. His first act in the cause was to contest jurisdiction and having timely done so, he thereafter proceeded to protect his other interests in the lawsuit. His appeal, therefore, places squarely before us the validity of the long-arm statute (G.S. 55-33) as applied to this defendant. Defendant Taylor was served process in the same manner as the other defendants, and he is not contesting the mechanical aspects of such service, but rather contends that it is violative of due process to subject him to the jurisdiction of the North Carolina courts since he lacks the minimum contacts with the State to enable any of its courts to exercise jurisdiction over his person. In support of his contentions, he relies heavily upon the case of *Shaffer v. Heitner*, 433 U.S. 186, 53 L.Ed. 2d 683, 97 S.Ct. 2569 (1977), arguing that this case makes the purported exercise of long-arm jurisdiction over him via G.S. 55-33 unconstitutional on its face.

In *Shaffer*, plaintiffs employed an arcane procedure apparently peculiar to Delaware whereby, in suing directors of a Delaware corporation with principal offices in Arizona, shares in the Delaware corporation belonging to the defendant directors were sequestered and jurisdiction was thence obtained *quasi in rem* over the owners of the shares. The United States Supreme Court held that jurisdiction obtained in this manner was violative of due process and was not consonant with the standards of fairness enunciated in *International Shoe v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154, 161 ALR 1057 (1945). We decline to accept defendant Taylor's contentions, although counsel have skillfully briefed and argued them; this is but the second post-*Shaffer* challenge to a long-arm statute to come before our Court, and we have given the question the substantial consideration that it merits.

At the outset, we would enumerate the major factual distinctions which would justify our reaching a result different from that in *Shaffer* in the instant case:

1. The jurisdiction purportedly exercised by the Delaware courts over the fiduciary defendants in *Shaffer* was not derived from any relation the directors had with the corporation incorporated in the forum state; it was derived solely from the sequestration of shares of a corporation belonging to defendant shareholders which were found to be constructively present in the forum state for such purpose. This meant that *any* shareholder, not just a director-shareholder, could be made amenable to the jurisdiction of the Delaware courts by the *quasi in rem* proceeding. In the instant case, however, jurisdiction is derived by reason of the defendant's being a director of the domestic corporation; his interest as a shareholder or the constructive presence of his shares in North Carolina do not in any way form the basis for our court's jurisdiction.

2. Delaware had not, by its legislature, enacted any statute clearly designed to protect its interest in providing a forum for suits against fiduciaries of domestic corporations; North Carolina has done so.

3. The only act of the defendant directors in *Shaffer* upon which jurisdiction was predicated was the purchase of shares in a corporation domesticated in the forum state; jurisdiction in the instant case is predicated upon the acceptance of a fiduciary position in a domestic corporation by an individual when the laws of the state of incorporation unequivocally give notice that such fiduciary may be called upon to defend himself in a forum of that state.

We interpret *Shaffer* to stand for the proposition that all purported exercises of jurisdiction, whether *in rem, quasi in rem* or *in personam*, must be consistent with the Due Process Clause and be scrutinized and evaluated in light of the minimum contacts standard of International Shoe, *supra*. Accordingly, we turn to *Byham v. House Corp.*, 265 N.C. 50, 143 S.E. 2d 225 (1965) (in which our Supreme Court listed a number of factors which would be relevant to consideration of whether the "minimum contacts" and "fair play" mandated by *International Shoe* are present) and analyze the purported exercise of jurisdiction over Herman Tay-

lor, Jr. under the appropriate legal principles. (We list these factors in the same order as the Court in *Byham*, but assign them different numbers to reflect our omission of those not pertinent to the case before us.)

(1) *The form of substituted service adopted by the forum state must give reasonable assurance that the notice to defendant will be actual.* There is no question that defendant Herman Taylor, Jr., received actual notice of the pendent litigation.

(2) *It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.* The defendant before us voluntarily accepted a directorship in a North Carolina domestic corporation, a fiduciary position which is possessed of both privileges and responsibilities under our State law.

(3) *Consideration should be given to any legitimate interest the state of the forum has in protecting its residents with respect to the activities and contacts of the non-resident.* North Carolina has, of course, an inherent regulatory interest in the activities of domestic corporations and their fiduciaries. This interest is heightened when, as in the case of insurance companies, public utilities or common carriers, the activity engaged in by the domestic corporation is one that is found to be so important to the public welfare that a significantly higher degree of statutory and administrative regulatory control is exercised by the state over the corporation. North Carolina additionally has a manifest interest in providing a forum for the settlement of disputes arising under her laws and to which her laws must apply. Were we to accept the contentions of the defendant, a corporation's management and directors would be free to avail themselves of the protection and facilities of our State and its laws, but could, merely by choice of location for corporate headquarters and residency of its directors, completely remove themselves from the jurisdiction of the North Carolina courts and place themselves beyond the reach of individual resident shareholder plaintiffs, leaving regulation and the interpretation of North Carolina law applicable to them in the hands of whatever forum the corporation's management and directors have chosen, which forum may or may not (under its choice of law principles) look to the applicable law and

may or may not correctly interpret it. All American does not exist as a corporate entity but by virtue of the North Carolina business corporation laws; its directors, past and present, hold no office and possess no power over the corporation except by virtue of North Carolina law defining their duties and privileges. Defendant Taylor's ignorance of the domicile of All American, whether culpable or not, will assuredly not relieve him from any of the responsibilities placed upon him by North Carolina law, as the acceptance of a directorship in a corporation is an act which of itself should suggest duties and responsibilities to the corporation so served and would reasonably suggest to a prudent person that malfeasance would subject a director to liability in some forum. On the basis of ignorance serving to eradicate contact with a forum state, Louisiana would have no greater contact or claim to jurisdiction over the defendant than North Carolina, as he testified that he did not know where All American was incorporated.

(4) *Consideration should be given to the question whether the courts of the forum state are open to the non-resident to enforce obligations of residents of such state created by the activities and contacts of the non-resident.* The defendant may certainly sue in his own name in the North Carolina courts upon matters arising from his activity and contact with North Carolina. He could also, in his capacity as a director, have caused suit to be brought in North Carolina in the corporate name of All American to enforce obligations of North Carolina residents to the corporation. The courts of North Carolina have at all times been open to him if he needed or desired the use of them in the context of his role as director of a domestic corporation.

(5) *An estimate of the inconveniences which would result to the non-resident from a trial away from his home or principal place of business is relevant.* While the convenience of the forum to any or all parties may prove relevant, there is no requirement that inconvenience to a non-resident will of itself negate an attempted exercise of jurisdiction over that non-resident. There is almost always some hardship to the party required to litigate away from home. But there is no constitutional requirement that this hardship must invariably be borne by the plaintiff whenever the defendant is a non-resident. *Henry R. Jahn & Son, Inc. v. Superior Court*, 49 C. 2d 855, 860, 323 P. 2d 437, 440 (1942) as

stated in *Byham v. House Corp., supra*. It appears from the record that no greater inconvenience would accrue to defendant Taylor by having to defend this action in North Carolina than would accrue to the plaintiffs by having to prosecute the action in Louisiana, in a piece-meal fashion (since the other defendants are inescapably drawn into the North Carolina court's jurisdiction) and the trial judge apparently decided for the plaintiffs on this issue in light of the state's interest in providing a fair forum for her resident plaintiffs. We will not question his conclusion here.

(6) *Consideration should be given to the question whether the crucial witnesses and material evidence are to be found in the forum state.* It is apparent from the record that much documentary evidence pertinent to this case and that a number of witnesses who would be called are located in Louisiana. This consideration obviously cuts in favor of Louisiana as a forum state.

(7) *When claims are small or moderate, individual claimants frequently cannot afford the cost of bringing an action in a foreign forum, thus placing the non-resident beyond the reach of the claimant. Whether this is the situation in a given case is pertinent.* In the case before us, no benefit from the suit will accrue directly to the shareholders. The corporation is the beneficial party, and the plaintiffs will realize benefit only to the extent their shares increase in value as a result of successful litigation culminating in successfully executed judgments against solvent defendants. The shares of All American were nearly worthless when this action was instituted. The litigation promised to be protracted and complex. Had the suit been instituted in a foreign jurisdiction, the cost of litigation could easily have exceeded the value of the shares represented by the plaintiffs. In such an event, the plaintiffs could not, as a matter of common sense, have been expected to maintain their action, and thus the defendants would have been out of reach for all practical purposes.

(8) *It is essential to determine the extent to which the legislature of the forum state has given authority to its courts to entertain litigation against non-residents.* North Carolina's legislature, by way of G.S. 1-75.4(8) and G.S. 55-33, has expressed a substantial interest in bringing non-resident directors before the North Carolina courts, and has given to the courts the fullest jurisdiction allowable under the Constitution. It was the failure of

the Delaware legislature to make manifest such interest that the majority in *Shaffer* found so persuasive as to the non-existence of jurisdiction.

The majority opinion in *Shaffer* and Justice Brennan's partial dissent are both susceptible to an interpretation that a "consent" statute such as N.C. G.S. 55-33 would be valid on its face; however, it is not necessary that we consider the validity of the statute *per se* in question as we conclude from a consideration of the foregoing matters that sufficient contacts between North Carolina and Herman Taylor existed at the time of the events complained of to subject him validly to jurisdiction in the North Carolina courts under both *International Shoe* and *Shaffer*. Defendant's assignment of error is overruled.

Because of the result reached above, and for essentially the same reasons, we do not need to elaborately consider defendant's assignment of error pertaining to Judge Friday's findings that he voluntarily sought the protection of North Carolina law and concerning the convenience of the North Carolina courts as a forum. "The State does not acquire . . . jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law." *Hanson v. Denckla*, 357 U.S. 235, 254, 2 L.Ed. 2d 1283, 78 S.Ct. 1228 (1958). (*But see*, Comment, *The Reasonableness Standard in State-Court Jurisdiction: Shaffer v. Heitner and the Uniform Minimum Contacts Theory*, 14 Wake Forest L. Rev. 51 (1978). As we have found that all of the individual defendants are properly before the court, in view of the various and potentially conflicting considerations, North Carolina is *one*, if not the only, convenient and just forum for the litigation. The assignments of error are overruled. (We have noted defendant's final assignment of error to the finding by Judge Friday that he had waived his initial jurisdictional defense by subsequently appearing generally and proceeding to prudently defend himself. This finding is in conflict with our holding in *Smith v. Express Co.*, 34 N.C. App. 694, 239 S.E. 2d 614 (1977), and we overrule the trial judge's finding, although it has no effect upon the case as we have decided it.)

The recent case of *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F. Supp. 483 (D.C. Kans. 1978) (opinion filed 17 October 1978) further supports our holding that the trial court's ex-

ercise of jurisdiction over the non-resident directors was proper. It will also support the existence of jurisdiction in the North Carolina trial court over Republic Securities, Inc., should that at some point in trial on the merits become necessary. *Energy Reserves* involved the exercise of jurisdiction by a Federal District Court over the non-resident parent of a domestic corporation, even though the parent corporation had no physical contacts with the forum. The case contains an exhaustive analysis of the evolution of jurisdictional concepts to the standard enunciated by *International Shoe* and *Shaffer*, reaching the conclusion that actual or fictional physical presence in the forum state of the person or entity over whom long-arm jurisdiction is sought to be asserted is no longer a valid mode of analysis in the light of the two cases cited above. Rather, the question becomes whether the person or entity committed acts in the forum state either in person or through agents, which would justify the exercise of jurisdiction over that person in light of the "fairness" and "minimum contacts" tests. These are the tests and analysis we have employed to reach conclusions consonant with *Energy Reserves* and, we think, *Shaffer* and *International Shoe*.

## II

A second threshold question must also be determined in this appeal: to what extent, if any, is a corporation entitled to defend itself against a derivative action when it is named as a party defendant? This is a question of first impression in North Carolina; we have found no precedent on point and it is indicated in Robinson, North Carolina Corp. Law § 14-8 (2d ed.) that there is none. Although the issue was not briefed or argued by counsel, we raise it *ex mero motu* as it confronts us squarely upon the face of the record and a just and equitable disposition of the appeal would be impossible without our considering it.

A corporation is, beyond question, a necessary party to any litigation brought derivatively in its name, *Underwood v. Stafford*, 270 N.C. 700, 155 S.E. 2d 211 (1967), and is customarily captioned a nominal defendant. However, as the action is brought in the right of the corporation and any recovery thereunder accrues to the benefit of the corporation and not to the nominal plaintiffs who bring the action derivatively, it is apparent that the interests of the corporation are not necessarily adverse to those of the

plaintiffs and may be identical to them. The principle was well stated by Vice Chancellor Stein in *Solimine v. Hollander*, 129 N.J. Eq. 264, 19 A. 2d 344 (1941):

> It is important to remember the true nature of a suit of this character. The stockholders, suing and intervening, do not prosecute the cause in their own right and for their own benefit but in the right of the corporation and for its benefit. While nominally the company is named as a defendant, actually and realistically it is the true complainant, for any avails realized from the litigation belong to it and it alone. The only circumstance under which the individual stockholder is permitted to bring the suit is either the refusal of those in control of the company to bring the proceeding or the fact that their relation to the subject of the complaint is such that demand upon those in control to bring the suit would be futile. Whatever be the circumstances furnishing license to the individual stockholder to bring a class action of this kind, the fact remains that when suit is brought, and determined on its merits the company must be treated in all respects . . . as any other complainant in the ordinary cause.

>                     *     *     *

> The rule that I gather from the cases is to the effect that where directors are charged with misconduct in office and are sought to be held accountable, the corporation is required to take and maintain a wholly neutral position, taking sides neither with the complainant nor with the defending director. 129 N.J. Eq. 266-267, 19 A. 2d 345-346.

*Accord, Slutzker v. Rieber*, 132 N.J. Eq. 412, 28 A. 2d 528 (Ch. 1942); *accord, International Brotherhood of Teamsters, Etc. v. Hoffa*, 242 F. Supp. 246 (1965); *accord, Meyers v. Smith*, 190 Minn. 157, 251 N.W. 20 (1933); *accord, Chaplin v. Selznick*, 182 Misc. 66, 58 N.Y.S. 2d 453 (1945); *accord, Barrett v. Southern Connecticut Gas Co.*, 172 Conn. 362, 374 A. 2d 1051 (1977). See also, generally, Note, Defenses in Shareholders' Derivative Suits — Who May Raise Them, 66 Harv. L. Rev. 342 (1952); 19 C.J.S. Corporations § 830; 13 Fletcher Cyclopedia, Corporations (Perm. Ed.) § 5939; *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed. 2d 729 (1970). The anomaly of a corporation, in whose name and right a

derivative action is brought, being allowed to defend itself against itself is apparent. It is particularly apparent in the situation, such as is found in the instant case, where the alleged wrongdoers are in control of the corporation. Accordingly, the corporation All American should not be allowed to defend this action on its merits, and portions of All American's appeal will be dismissed for lack of standing, as hereinafter noted.

[3] This is not to say that in all cases and in all circumstances a corporation is powerless to resist a derivative action. In some situations, the corporation in whose interest the derivative action is purportedly brought will have interests adverse to those of the nominal plaintiffs bringing the action derivatively, and will of necessity be more than a nominal defendant. Such situations would include an action to enjoin the performance of a contract by the corporation, to appoint a receiver, to interfere with a corporate reorganization or to interfere with internal management where there is no allegation of fraud or bad faith. *See, National Bankers Life Insurance Company v. Adler*, 324 S.W. 2d 35 (1959) and the cases collected therein. Additionally, certain defenses which are properly asserted before trial on the merits of the action are peculiar to the corporation alone, and may be properly raised *only* by the nominal defendant who, for purposes of those matters, ceases to be a nominal defendant and becomes an actual party defendant. These defenses would include the lack of standing of the plaintiffs to sue derivatively for reasons of insufficient representation of shareholders and a failure on plaintiffs' part to make a demand upon the board of directors. Other defenses, such as matters of personal jurisdiction, venue and subject matter jurisdiction (which question may arise in the context of alleged existence of prior pending actions involving matters identical to those complained of in the derivative suit) could be asserted by both corporations and individual defendants where appropriate, as they are not defenses on the merits of the derivative claim. The defense of business judgment, it is to be noted, is not available to the corporation where a majority of its directors are implicated in the allegations of the suit, as it is a defense on the merits which may properly be interposed only by the directors and management of the corporation, unless the corporation is a real defendant as to some meritorious issue in the suit. *Slutzker v. Rieber*, 132 N.J. Eq. 412, 28 A. 2d 528 (Ch. 1942).

[4]  For the foregoing reasons, we hold that in an action, brought by a minority shareholder derivatively in the name and right of a corporation, to enforce rights or to seek redress accruing to the corporation, that corporation will be deemed for purposes of the litigation to be aligned as a party plaintiff (except to the extent that the corporation is an actual defendant as to an issue in the action) although for purposes of form it is designated as a nominal defendant. Accordingly, the corporation, except as noted above, may not defend itself against the derivative action on the merits and must limit its defenses, if any, to the pretrial matters proper to it. Where a corporation seeks to extend its defenses beyond those areas in which it may properly conduct them, dismissal will lie against it. The effects that our holding will have on the instant case will be noted as we reach the issues where it is pertinent.

## III

The individual defendants and All American filed several motions to dismiss this derivative action pursuant to Rule 12(b) of the North Carolina Rules of Civil Procedure. The grounds stated were:

1. failure on the part of the plaintiffs to comply with the prerequisites for filing a derivative action as set out in G.S. 55-55(b).

2. all necessary parties were not before the court and joined in the action.

3. damages were not sufficiently alleged in the complaint and were speculative and uncertain.

4. there was a prior pending action between the same parties and involving the same issues as the instant derivative action.

We will treat these issues *seriatim*.

Plaintiffs in a derivative action are required by G.S. 55-55(b) to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort." This statutory provision codifies the prior case law of this and other jurisdictions where it has been held that in order for an individual as a shareholder to bring suit against the directors of a corporation for breaches of

their duties to the corporation, he must show that he has exhausted his intracorporate remedies by making demand upon the board to do that which he seeks to have done. However, one equitable exception to the general rule has consistently been maintained by our courts: where the directors who are in control of the corporation are the same ones (or under the control of the same ones) as were initially responsible for the breaches of duty complained of, the demand of a shareholder upon directors to sue themselves or their principals would be futile, and as such is not required as a prerequisite for the maintenance of the action. This principle was enunciated in *Coble v. Beall*, 130 N.C. 533, 41 S.E. 793 (1902):

> If the facts as alleged show that the defendants charged with a wrong doing, or some of them, constituted a majority of the directors or managing body at the time of commencing the suit, or that the directors or the majority thereof, are still under control of the wrong-doing defendants, so that a refusal of the managing body, if requested, to bring suit in the name of the corporation, may be informed with reasonable certainty, then an action by a stockholder may be maintained without alleging or proving any notice, request, demand or express refusal. *Id.* at p. 536, 41 S.E. 794.

*Accord, Hill v. Erwin Mills, Inc.*, 239 N.C. 437, 80 S.E. 2d 358 (1954), and the several cases pertinent cited thereunder.

[5]  In the case before us, the complaint affirmatively alleges that defendants Thomas H. Clark, Ben F. Thompson, Jr., George C. Wiemer, Jr., Travis E. Nichols, Lelier J. Leleux, W. W. Hawkins, J. Malcolm Duhe, Jr., Alfred Begnaud, Emery J. Bares, Paul G. Backus and Russell E. Walton, constituting a numerical majority of All American's board of directors, were directors at the time of the transactions complained of and are still directors of All American. This, of itself, would relieve plaintiffs of any obligation to make demand upon the board, but would instead entitle them to state in their complaint the "reasons for . . . [their] . . . failure to obtain the action or for not making the effort." G.S. 55-55(b). It also appears, however, that plaintiffs did make demand upon the board of directors at the substitute 1976 annual shareholders meeting held 20 October 1976, and this demand was overwhelmingly refused. In view of the fact that they were not required to

make any such demand at all, the failure to be specific in alleging such a demand would hardly be grounds for dismissal. This assignment of error by defendant All American is patently meritless and is overruled; as the individual defendants lack standing to assert this defense, their appeal as to the pertinent portion of Judge Friday's findings and order is dismissed.

[6] It is vigorously contended by the defendants that Remy Gross II, Gary J. Anderson, Republic Securities Corporation, National Bank of New Orleans, McIngvale Associates General Agency, Inc., George C. McIngvale, National Bank of Commerce of Dallas, Texas, and Louisiana National Bank[4] are necessary parties to this action, as no decree or valid judgment may be rendered which will not affect their interests. They cite *Equitable Life Assurance Society of the United States v. Basnight*, 234 N.C. 347, 67 S.E. 2d 390 (1951) in support of their contention, quoting from Justice Ervin's opinion as follows:

> A sound criterion for deciding whether particular persons must be joined in litigation between others appears in this definition: Necessary parties are those persons who have rights which must be ascertained and settled before the rights of the parties to the suit can be determined. *Id.* at p. 352, 67 S.E. 2d at 395.

We have no quarrel whatever with this statement of the law. Rule 19 of the North Carolina Rules of Civil Procedure has specifically adopted the prior case law of this jurisdiction concerning proper and necessary parties, rather than the federal rule classifications of "indispensable" and "conditionally necessary" parties. However, the present posture of the action moots any consideration of the question of necessary parties. The complaint originally prayed for rescission and cancellation of a number of allegedly illegal agreements and transactions.

Judge Friday properly concluded that if these transactions were to be voided, the parties to those transactions would have to be joined. *Tucker v. National Linen Service Corp.*, 200 F. 2d 858 (5th Cir. 1953); 3A J. Moore Federal Practice, ¶ 19.13(1) at p. 2379, note 15. It was also apparent that the courts of this state could not properly obtain jurisdiction over all of these parties.

---

4. All of these persons and entities have had some degree of relationship with All American with reference to the several transactions complained of by plaintiffs.

Therefore Judge Friday, using the broad powers given him in Rule 21 of the North Carolina Rules of Civil Procedure and to the end of promoting justice, struck from the complaint the prayers for relief which exceeded the proper scope of the action and the court's jurisdiction, leaving only the causes of action against the defendant directors. The holding of *Mills Co. v. Earle*, 233 N.C. 74, 62 S.E. 2d 492 (1950), (which opinion was also written by Justice Ervin) stands for the proposition that a cause of action against corporate directors for malfeasance is distinct from a cause of action for rescission of the transactions constituting the malfeasance, and that there is no requirement for joinder of the parties to the transactions complained of if their rescission is not sought, as those parties would not be bound or affected in law by the action against the directors. If a complaint alleges facts which would constitute several causes of action but only one action is represented by the prayer for relief, the extraneous allegations may be viewed as surplusage and disregarded. *Heath v. Kirkman*, 240 N.C. 303, 82 S.E. 2d 104 (1954). *Cf., Snotherly v. Jennette*, 232 N.C. 605, 61 S.E. 2d 708 (1952). And, *see*, generally, Brandis & Graham, *Recent Developments in the Field of Permissive Joinder of Parties and Causes in North Carolina*, 34 N.C. L. Rev. 405 (1956). As Rule 21 of the North Carolina Rules of Civil Procedure allows severance of any claim against any party, and a ruling on such severance lies within the discretion of the trial judge, absent a manifest abuse of discretion, the trial judge's ruling will not be disturbed. Defendants have failed to make any such showing. Accordingly, we find that the various parties sought by defendants to be joined would have been necessary parties to the action as originally pleaded, but in view of the severance of the claims against the directors from the other prayers for relief (which were dismissed without prejudice), joinder of these additional parties is not necessary, as they will not be legally bound or affected by any decree or judgment rendered in this proceeding. The action of Judge Friday denying dismissal on this ground is affirmed, and the assignments of error by defendants are overruled.

[7] The damages arising on the facts as pleaded are anything but speculative and uncertain. While the precise extent of all damages will only be made clear upon trial and after further discovery, the allegations of damage are sufficiently specific to give fair notice to the defendants of the events and transactions

involved. Amendment of the complaint may be had where appropriate as additional evidence becomes available. This assignment of error is meritless and is overruled as to the individual defendants. The pleading of the damages is an issue which is central to the merits of the action, and in the instant case, does not constitute an area in which All American has standing to assert a defense. The appeal of the corporate defendant on this point accordingly is dismissed.

[8] Defendants contend that plaintiffs in this action should have intervened in the rehabilitation proceeding instituted prior to this action, and made motion in that cause to compel the board to act, rather than instituting another action. They contend that Judge Martin's retention of the cause in the prior rehabilitation proceeding deprives the court of subject matter jurisdiction in the instant case. That contention is meritless. The present action lacks the identity of parties, subject matter, issues involved and relief demanded, set forth as being essential for abatement of an action on grounds of a prior action pending in *Diamond Brand Canvas Products Co. v. Christy*, 262 N.C. 579, 138 S.E. 2d 218 (1964) and the cases cited thereunder. A protracted discussion here of the distinctions between the instant action and the prior rehabilitation proceeding would be fruitless. We find them to be obvious and dispositive. This assignment of error is overruled.

[9] Defendants also moved to dismiss this action on the grounds that the action of the majority of the board of directors in declining to sue themselves and in deciding to resist the derivative action claims brought against them was a good faith business judgment made in the best interests of All American and its shareholders. They cite a number of cases seeking to support their contention that the trial judge erred in failing to dismiss the action on this ground, notably *Auerbach v. Bennett*, Index No. 572/77, New York Supreme Court (Westchester County, 1977), which, it is argued, is completely dispositive of the issue and resolves all conflicts in defendants' favor. These contentions of the defendants have no basis in law or in fact. In the *Auerbach* case, a corporation's board of directors, upon learning that a derivative action had been filed against a number of the individual directors and officers of the corporation, promptly appointed a litigation evaluation committee comprised of directors who were not serving in that capacity at the time of the incidents

cited in the complaint, and vested that committee with the plenary power of the board to make any decisions appropriate as to the claims made in the derivative action. The board as a whole took no action in regard to the derivative action after this point, and the committee was never intended to operate only in an advisory capacity. The undisputed facts as they appear in the record and the exhibits of the case before us are as follows:

1. defendants Clark, Thompson, Nichols, Leleux, Hawkins, Duhe, Begnaud, Bares, Backus and Walton were members of All American's board of directors at the time of the events complained of.

2. this same group of individuals constituted a majority of the board of directors of All American at the time of the events complained of.

3. this same group of individuals presently constitutes a majority of All American's board of directors.

4. the seven purportedly disinterested directors of All American were nominated and elected by this group of individuals.

5. that a litigation evaluation committee, comprised of three of the purportedly disinterested directors, was appointed 3 February 1977 to investigate and evaluate potential claims All American might have against a number of individuals, including the defendants listed in (1) above.

6. the litigation evaluation committee was *not* vested with the plenary powers of the full board, but was *only* an advisory group whose task it was to report to the full board its recommendations as to potential litigation.

7. at the same 3 February 1977 meeting of the All American board at which the litigation evaluation committee was appointed, the full board decided by resolution to vigorously resist the derivative action claims filed by plaintiffs.

8. the motion to disqualify plaintiffs' counsel, which was the first affirmative act of All American in this case, was filed by counsel for All American on 2 February 1977 supporting an inference that the decision to resist the suit brought against the

defendant directors controlling All American's board was made prior to the formation of the litigation evaluation committee.

9. there appears of record no evidence that any independent judgment was at any time exercised by the litigation evaluation committee in regard to the derivative action claims.

The business judgment rule, stated simply, provides that when a corporation's decision not to assert a claim represents a good faith business judgment by its directors, a shareholder will not be permitted to substitute his judgment for that of the company's management by asserting the claim in a derivative action. *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917). Accordingly, where the business judgment question is presented to a court as a ground for dismissal, the sole issue for determination is whether the decision was made in good faith. *Swanson v. Traer*, 249 F. 2d 854 (7th Cir. 1957). In the instant case, the trial judge concluded that on the facts before him there could not have been, as a matter of law, any good faith in the decision of these directors not to proceed with the claims represented by the derivative action. As the motion for dismissal pursuant to the business judgment rule presented matters outside the pleading, it was properly treated as a motion for summary judgment pursuant to Rule 56, North Carolina Rules of Civil Procedure, as provided by Rule 12(b) of the North Carolina Rules of Civil Procedure. No material facts appear from the record to have been in controversy concerning the manner in which the decision to resist the derivative action was reached, and it hardly could be expected that the members of the litigation evaluation committee would seek to persuade the majority of the board of All American to reverse its decision of 2 and 3 February 1977. Defendants presented evidence by affidavit on their motion, some of which had exhibits attached that clearly establish the facts as we have summarized them above. The plaintiffs did not produce evidence on the motion, relying apparently upon the inferences arising upon the face of defendants' evidence. We conclude that there was ample competent evidence before the court to sustain its finding that the decision of All American not to pursue any claims against the directors now defendants was not made independently of those interested directors and therefore was not in good faith. None of the authority cited to us by defendants is in any way inconsistent with the trial judge's

ruling, as they clearly emphasize the fundamental importance of *independent* judgment by directors as being crucial to the good faith question. Therefore, summary judgment was properly entered against defendants as to this defense and we affirm the ruling of the trial judge on the point. The individual defendants' pertinent assignments of error are overruled. As was noted *supra*, this defense is one on the merits and is not one which the corporate defendant has standing to assert. Accordingly, All American's appeal as to this matter is dismissed.

## IV

All American and the individual defendants filed motions to disqualify counsel for the plaintiffs, alleging violations of Canons 2 (in that the firm of CLP&Y improperly solicited clients to be plaintiffs to this action), 4 (in that CLP&Y was using confidences and secrets gained in prior representation of All American to the present and serious detriment of All American), 5 (in that the fee arrangement entered into by plaintiffs and CLP&Y, whereby CLP&Y would receive a one-third interest in the shares it was representing, would constitute an acquisition by CLP&Y of an improper interest in the subject matter of the litigation), and 9 (in that all of the foregoing actions of CLP&Y distinctly gave the appearance of impropriety and called into disrepute the entire legal profession) of the Code of Professional Responsibility and the Disciplinary Rules thereunder as the basis for such disqualification. The trial judge heard and received evidence on the motions at the conclusion of copious discovery, and denied all of the motions. Defendants contend, alternatively, that the denial of the motions was an abuse of discretion on the part of the trial judge and that, for purposes of review of the trial judge's rulings on the ethical questions, the question confronting us is not whether the trial judge abused his discretion, but whether his actions reflected a correct and appropriate understanding of the applicable legal and ethical principles in the context of the evidence before him, placing this Court in the position of functionally sitting as a court of original jurisdiction to consider these ethical questions without reference or deference to the proceedings below. Defendants rely upon *Aetna Casualty & Surety Co. v. United States*, 570 F. 2d 1197 (4 Cir. 1978). This case noted that where facts were not in substantial dispute and the question of disqualification was essentially one of law, the trial court enjoys

no particular functional advantage over appellate courts in their formulation and application of ethical norms. *See, e.g. Woods v. Covington Cty. Bank*, 537 F. 2d 810 (5 Cir. 1976). This concept is not new or strange to us. *See, In re Robinson*, 37 N.C. App. 671, 247 S.E. 2d 241 (1978); *In re Dale*, 37 N.C. App. 680, 247 S.E. 2d 246 (1978). It does not mean, however, that we will ignore or give only minimal deference to the findings and conclusions of the trial judge in reference to these ethical questions.

[10-12] North Carolina is different from many other jurisdictions in that there is a dual mechanism for the regulation and discipline of attorneys practicing in the state courts. The North Carolina State Bar, having established a Code of Professional Responsibility to which its members are required to conform as a condition precedent to the continuing practice of law in North Carolina, is empowered by statute (G.S. 84-28) to discipline attorneys and regulate their conduct. Another statute in the same chapter, (G.S. 84-36), however, saves and protects the inherent powers of the court to regulate and discipline attorneys practicing before it. This power of the court is an inherent one because it is an essential one for the court to possess in order for it to protect itself from fraud and impropriety and to serve the ends of the administration of justice which are, fundamentally, the *raison d'etre* for the existence and operation of the courts. *See*, Inherent Powers of the Court, National College of the State Judiciary (Reno, Nevada: 1973). This inherent power is co-equal and co-extensive with the statutory grant of powers to the North Carolina State Bar, and, while the interests of the two entities having disciplinary jurisdiction may, and often do, overlap, they are not always identical and as the interests sought to be protected by the court's inherent power are distinct from those of the North Carolina State Bar, the action of a court in disciplining or disqualifying an attorney practicing before it is not in derogation or to the exclusion of similar action by the Bar. It is to be noted that steps are being taken to link more closely the disciplinary functions of the Bar and the courts. However, it is clear that the court's inherent power is not limited or bound by the technical precepts contained in the Code of Professional Responsibility as administered by the Bar.

We make these statements by way of introducing the peculiar situation presented to us by this appeal. Two of the

ethical questions raised, one dealing with the improper use of confidences and secrets of a client, and the other dealing with the possible acquisition by plaintiffs' counsel of an improper interest in the subject matter of the instant litigation, are clearly germane to the merits of the case, were properly raised before the trial court and would necessarily have to be decided before the other issues of the case proceeded to trial on the merits. The questions raised concerning solicitation and appearance of impropriety issues, would more appropriately have been raised within the Bar's own disciplinary machinery, as any violations of these Canons (2 and 9) in the instant case do not present aggrieved parties on appeal in any conventional sense. However, even these issues could properly be dealt with by the trial court in its inherent power, as all of the parties apparently raised no objection to the jurisdiction of the court to hear the matters, and the trial court received all evidence offered by the parties on all the issues in order to make its ruling. Accordingly, we will review the findings and rulings of the trial court on the ethical questions and will consider all of the same evidence which was before the trial judge and reach our own conclusions based upon the record and exhibits. *See, In re Dale, supra.*

[13]  Judge Friday found that no attorney-client relation had arisen between CLP&Y and All American that would justify the assertion of an attorney-client privilege by All American in this action, particularly as against its minority shareholders. Upon a thorough examination of the record and its exhibits, we agree. Our agreement is premised upon two considerations.

First, the record makes plain that:

1. all of the transactions and occurrences complained of in the present action were *fait accompli* at the time CLP&Y began to represent All American just prior to the initiation of rehabilitation proceedings.

2. the firm of CLP&Y was retained for the purposes of representing All American and not its board of directors, and its role was of necessity an investigatory one which would inevitably culminate in public disclosures relevant to the matters now complained of.

3. the role of CLP&Y was from the first adverse to the interests of management and the directors, and concurrent with the

interests of All American as a corporate entity and the interests of the minority shareholders who are now bringing this action derivatively. In the case of *Ingram, Comm. of Insurance v. Assurance Co.*, 34 N.C. App. 517, 239 S.E. 2d 474 (1977), (an appeal of a matter concerning the rehabilitation of All American) counsel for All American, the same counsel who purportedly represent All American in the present action, had the following to say about CLP&Y in their brief:

> To whom was Cansler, Lockhart, Parker & Young, P.A. accountable? It was the conclusion of the trial court that All American was entitled to representation. But a corporation normally speaks through its officers and board of directors. The board of directors of All American attempted to employ counsel other than Cansler, Lockhart, Parker & Young, P.A. in November, 1975. Such corporate action was subsequently declared ineffective by the trial court in its order of November 14, 1975. The language of such order went further, however, than simply to declare that the attempted discharge of Cansler, Lockhart, Parker & Young, P.A. and employment of other counsel had been improperly accomplished. It stated affirmatively that Cansler, Lockhart, Parker & Young, P.A. was "designated counsel [for All American] IN THIS PROCEEDING." The court order, therefore, made clear that All American was not to be allowed to employ legal counsel of its own choosing.

> In addition, the court's earlier order of November 7, 1975, made clear that All American was not to be represented by counsel selected by the rehabilitator. The court itself assumed the authority to choose counsel for All American, in the face of the expressed opposition of all parties to the proceeding and in derogation of the court's own conclusion that All American was entitled to independent legal representation in the action. The status of Cansler, Lockhart, Parker & Young, P.A. was not only independent from the rehabilitator but also from All American. *No party to the lawsuit had authority over Mr. Lockhart and he acted with absolute independence first in defending against rehabilitation and subsequently in defending against termination of rehabilitation.* (Emphasis ours.)

Respondent appellant's brief, pages 8-9, filed 26 January 1977, No. 7726SC13, North Carolina Court of Appeals. Although the passage quoted above deals with the rehabilitation proceeding, that proceeding followed closely the initiation of a relation between the corporate entity All American and CLP&Y. The purported voice of All American was in fact the voice of the directors who are now defendants and whose interests were and are adverse to those of All American as a corporate entity. The representation by CLP&Y, whether actually or derivatively of All American, has continued from its inception to serve *only* the interests of the corporate entity, a posture that is wholly consistent with Ethical Consideration 5-18, Code of Professional Responsibility.

Secondly, we held above that the corporate entity All American must be treated as a party plaintiff for purposes of litigation on the merits of this action, particularly since the individual defendant directors effectively controlled the voice of the corporation. The gravamen of the motion to disqualify on Canon 4 grounds is to prevent knowledge (and evidence obtained by benefit of that knowledge) from being used to the detriment of the client from whom it was initially obtained in the context of a confidential relationship. It is abundantly clear from the record that no confidential relationship was ever developed between any of the individual defendants and CLP&Y, and so if any privilege is to be asserted as to any communications made by them to CLP&Y, it must be asserted by the corporate defendant or not at all. We conclude that All American lacks standing as a party plaintiff to assert this privilege against itself. Likewise, the individual defendants have no standing, upon the record before us, to assert this privilege or invoke any sanctions against CLP&Y under Canon 4. *See, e.g., Meehan v. Hopps,* 144 Cal. App. 2d 284, 301 P. 2d 10 (1956); *U.S. Industries, Inc. v. Goldman,* 421 F. Supp. 7 (S.D.N.Y. 1976). *Cf. E. F. Hutton & Co. v. Brown,* 305 F. Supp. 371 (S.D. Texas 1969). The appeal of All American as to Canon 4 questions is dismissed. The assignments of error of the individual defendants are overruled. We adopt the trial judge's conclusion that there were no violations of Canon 4.

[14]   The defendants have contended that CLP&Y acquired an improper interest in the subject matter of the litigation in violation of Canon 5, in that CLP&Y has acquired substantial holdings in All American under the fee contracts executed by the in-

dividual shareholders. These contracts provided for the escrow of all shares with nominal plaintiff Norman Swenson, and for a one-third interest of such shares (or equivalent value) to be given to CLP&Y in consideration of CLP&Y's legal services rendered to plaintiffs. At the time these contracts were executed, the shares were worth between $.50 and $1.00 per share, and the prospect of their becoming wholly worthless was not remote. The trial judge concluded that this was a fee arrangement in the nature of a contingent fee and was not improper. We note that representation preceded acquisition of these interests in the shares, and adopt the trial judge's conclusions. No cases have been cited which would give any support to a contrary conclusion. These assignments of error are overruled and we adopt the conclusions of the trial judge as to the Canon 5 questions.

[15]   As to whether CLP&Y conducted improper solicitation, the record shows that Lockhart did not at any time personally solicit any clients, nor did he cause others to do so for him. There is no need to review here the quantity of evidence upon which the trial judge relied for his findings; suffice it to say it was ample to support his conclusions and our independent study of the same materials brings us to a like conclusion. The defendants' assignments of error on this point are overruled.

We have also carefully considered the arguments made by defendants under Canon 9 concerning the "appearance of impropriety" on the part of CLP&Y and agree with the trial judge that no violation is made to appear on the present facts. These assignments of error are overruled.

The trial judge, at the conclusion of his order denying the disqualification motions, made the following statements which we quote, endorse and adopt as our own:

10. This Court has the inherent power to supervise the conduct of litigation which comes under its jurisdiction to insure that the interests of justice are served. In addition to the legal grounds and conclusions heretofore recited, this Court, in the exercise of its discretion, determines that disqualification of counsel on the facts revealed in this record would tend to defeat or impair, rather than promote the ends of justice and that this consideration, standing alone, would amply warrant denial of the pending motion.

11. The preservation of the integrity of North Carolina contracts, the protection of in-state and out-of-state stockholders in North Carolina corporations and the interest of the State of North Carolina in the integrity of insurance companies incorporated in this State are paramount in this case and outweigh all of the considerations advanced by the moving parties in support of the motion to disqualify.

Perfectly consonant with these conclusions of the trial judge is this portion of the *amicus* brief filed by the Connecticut Bar Association in *International Electronics Corp. v. Flanzer*, 527 F. 2d 1288 (2 Cir. 1975) and quoted by the Court in that opinion:

It behooves this court, therefore, while mindful of the existing Code, to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits. 527 F. 2d at 1293; *Aetna Casualty & Surety Co. v. United States*, 570 F. 2d 1202 (1978).

The rulings of the trial judge, upon the evidence before him, are in complete agreement with the conclusions we reach upon the same evidence, and we, too, bow to the ends of justice as our ultimate goal in not only affirming but adopting his rulings on these questions.

V

[16] Defendants have contended that the trial court erred in denying their motion to disqualify plaintiffs' counsel because the findings of fact in support of the court's order denying the disqualification motions were based upon incompetent evidence. Seven assignments of error, framing a majority of the 569 exceptions taken by defendants in the course of the pretrial proceedings, are brought forward by this question. This diffuse approach to the question makes it extremely difficult for this Court (or any other) to consider the problems complained of in the degree of detail we would ordinarily consider appropriate. The many exceptions are duplicative and some border on the

frivolous. Nevertheless, we have carefully examined those which are meritorious on their face, and have thoroughly searched the record and exhibits with reference to the question presented. We are satisfied that there is ample competent evidence in the record to support the trial judge's findings. The trial judge is certainly not to be censured for failing to rule individually on each objection of counsel when, as was the case here, they were made with such frequency as to pose a serious threat to the eventual termination of the action because of the physical limitations of time and energy of the trial judge. We find no indication that the trial judge "clearly relied on incompetent evidence" and so we will assume that he disregarded any incompetent evidence in the record in reaching his conclusions. *Bizzell v. Bizzell*, 247 N.C. 590, 101 S.E. 2d 668 (1958). These assignments of error are overruled.

Defendants also assign error to certain of the trial judge's findings, contending that they were unrelated to the issue before him. A detailed review of the exceptions contained in this assignment of error would be fruitless; they are without merit and the assignment of error is overruled.

## VI

[17, 18]  Plaintiffs bring forward one exception and assignment of error, contending that the trial judge erred in failing to grant their motion to enjoin All American from advancing any legal fees to the directors being sued and from participating in the further defense of the action. G.S. 55-19(d) permits a domestic corporation to advance legal fees to a director who is being called upon to defend an action brought in relation to his activity as a director, if that director gives to the corporation an "undertaking" that he will repay the monies so advanced if he is unsuccessful in his defense. Plaintiffs argue that the provisions of G.S. 55-30, governing transactions between interested directors and their corporations, would operate to prevent 55-19(d) from being effective on the particular facts of this case. We do not agree. It does not appear to us that the advancement of legal fees under 55-19(d) is necessarily a transaction in which a director is adversely interested, and even if it were, the disinterested directors of All American approved the advancement in this instance. The "undertaking" required by 55-19(d) for the repayment of fees advanced if the director is unsuccessful is just that: a written promise, not

made under seal, given as security for the performance of some act as required in a legal proceeding. Had the statute been intended to require a full security for all advancements, it could have so provided; we will not construe it to mean something contrary to the plain meaning of the language on its face. Plaintiffs' motion to enjoin All American from further action in its defense is made moot by our holding in section II above. The assignment of error is overruled.

This is not to say that under *all* circumstances the trial judge would be powerless to enjoin an advancement of legal fees by a corporation to its directors. However, on the facts before us and before the trial judge, he correctly ruled that he had no power to enjoin literal compliance with the applicable statute.

## VII

We commend the learned trial judge for his meticulous handling of this lengthy and extraordinarily complex matter. Such a proceeding places enormous strains upon a trial judge, and the extent to which the record before us is error-free demonstrates Judge Friday's high degree of capability.

In summary:

1) Plaintiffs' assignments of error are overruled and the ruling of the trial judge is affirmed.

2) The order of the trial judge denying motions by the individual defendants to dismiss for lack of personal jurisdiction is affirmed.

3) The order of the trial judge denying defendants' motions to disqualify plaintiffs' counsel is affirmed; All American's appeal as to Canon 4 issues is dismissed.

4) All American's appeal from Judge Friday's order denying motions to dismiss on grounds of business judgment and indefiniteness of damages as pleaded pursuant to Rule 12(b) and Rule 56 of the North Carolina Rules of Civil Procedure is dismissed. The order of the trial judge denying All American's motions to dismiss on other 12(b) grounds is affirmed.

5) The appeals by the individual defendants from the trial judge's order denying motions to dismiss on grounds of failure on

part of plaintiffs to comply with the prerequisites for filing a derivative action are dismissed. The order of the trial judge denying the other motions to dismiss pursuant to Rule 12(b) and Rule 56 of the North Carolina Rules of Civil Procedure is affirmed.

Affirmed in part and dismissed in part.

Judges VAUGHN and MITCHELL concur.