Gwaltney v. Gwaltney, 2017 NCBC 12.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 7063

DOUGLAS E. GWALTNEY, Individually
and Derivatively on Behalf of LITTLE
CREEK ELECTRONICS INC.,
      Plaintiff,

v.

JAMES A. GWALTNEY, MICHAEL S.
GREEN, and LITTLE CREEK
ELECTRONICS INC.,
      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFF'S
MOTION TO DISQUALIFY
COUNSEL**

THIS MATTER comes before the Court on Plaintiff's Motion to Disqualify Counsel for Little Creek Electronics, Inc. ("Little Creek") and to Dismiss or Strike Defendant's Pleadings ("Plaintiff's Motion to Disqualify"). Plaintiff seeks to disqualify Harry G. Gordon and the Gordon Law Offices (collectively, "Gordon") from representing the corporate Defendant, Little Creek, in this lawsuit, and to strike those pleadings filed to-date by Gordon on behalf of Little Creek in this action.

THE COURT, having carefully considered the Motion, the briefs and evidentiary materials filed in support of and in opposition to the Motion, and other appropriate matters of record, concludes, in its discretion, that the Motion should be GRANTED for the reasons set forth below.

A. *Factual and Procedural Background.*

1.    Little Creek is a North Carolina corporation with its principal place of business in Guilford County, North Carolina. Plaintiff Douglas E. Gwaltney ("Douglas" or "Plaintiff") and Defendants James A. Gwaltney ("James") and Michael S. Green ("Green") are each one-third shareholders in Little Creek and are the three members of Little Creek's Board of Directors ("Board").

2.    In 1999, Little Creek adopted a set of written "By-Laws of Little Creek Electronics, Inc." ("1999 By-Laws"). The 1999 By-Laws provide the Board with broad authority to manage the business of Little Creek. The 1999 By-Laws provide, in relevant part, as follows:

> **Section 3.1. General Powers.** The business and affairs of the Corporation shall be managed by its board of directors [.] Without limiting this general power, the board shall have the power and authority to (i) select and remove all officers, agents, and employees, prescribe their duties and fix their compensation; . . . (iv) borrow and incur indebtedness for corporate purposes . . .

3.    On December 3, 2009, Douglas, James, and Green, acting as both the shareholders and Board of Little Creek, unanimously consented to amend the 1999 By-Laws and adopted an amended set of by-laws ("Amended By-Laws").[1] The Amended By-Laws provided that "One hundred percent (100%) of the directors shall constitute a quorum" of the Board for purposes of conducting business, and that "[t]he act of 100% of the directors present at meeting at which a quorum is present shall be the act of the board of directors." (Am. By-Laws §§ 3.7, 3.8.) Accordingly,

---

[1] The Amended By-Laws are attached to the Verified Complaint as Exhibit A.

the Amended By-Laws require the unanimous agreement of Douglas, James, and Green to act on behalf of Little Creek.

4. The Amended By-Laws similarly provided that 100% of the outstanding shares of Little Creek constituted a quorum for purposes of shareholder action, and that "[t]he vote of the holders of one hundred percent (100%) of the shares present and entitled to vote at any duly organized meeting shall decide any question." (Am. By-Laws §§ 2.8, 2.10.)

5. Finally, the Amended By-Laws provided that they could be "altered, amended, or repealed, and new bylaws . . . adopted only by the vote of 100% of the directors." (Am. By-Laws § 9.1.)

6. In early 2016, Douglas became embroiled in a dispute with James and Green over certain actions taken by James and Green without his involvement or consent. Douglas retained an attorney, Robert Boydoh, Jr. ("Boydoh"), to represent him. James and Green retained Gordon to represent them in the dispute.

7. During the Spring and early Summer of 2016, Boydoh and Gordon corresponded on behalf of their respective clients in an effort to resolve the dispute. (Boydoh Aff. (10/26/16) ¶¶ 7-11, Exs. A-C; Ver. Compl., Ex. C.) Douglas alleges that during this period James and Green seized control of Little Creek and excluded him from participation in the corporation's management. (Ver. Compl. ¶ 25.)

8. On August 24, 2016, Douglas filed a Verified Complaint in Guilford County Superior Court.[2] In the Verified Complaint, Douglas raised individual claims against James and Green for breach of the Amended By-Laws and their refusal to produce Little Creek's corporate books and records to him. The Verified Complaint also raised individual claims by Douglas, and expressly raised derivative claims on behalf of Little Creek, against James and Green for breach of fiduciary duty and for removal of James and Green as directors pursuant to N.C. Gen. Stat. § 55-8-09 (hereinafter, references to the North Carolina General Statutes will be to "G.S."). Finally, Douglas sought to recover punitive damages from "Defendants," and requested injunctive relief prohibiting James and Green from acting on behalf of Little Creek.

9. On August 24, 2016, Boydoh sent Gordon a courtesy copy of the Verified Complaint and asked Gordon to accept service of the Complaint on behalf of James and Green. (Boydoh Aff. (10/26/16) ¶ 13, Ex. D.) Boydoh also asked Gordon to have James accept service for Little Creek as Little Creek's registered agent "since Little Creek is only a nominal party and would need separate representation, if any, in the litigation." (*Id.*)

10. On August 31, 2016, Gordon sent Boydoh a signed Acceptance of Service of Complaint ("Acceptance"). (*Id.* ¶ 14, Ex. E.) In the Acceptance, Gordon purported to accept service on behalf of Little Creek as "counsel for Defendant Little

---

[2] On August 24, 2016, Plaintiff also filed a notice of designation to the North Carolina Business Court. The Chief Justice of the North Carolina Supreme Court entered an order designating this matter as a complex business case.

Creek." (*Id.*). James and Green accepted service in their capacities as individual Defendants.

11.     On September 1, 2016, Boydoh sent Gordon an email informing Gordon that he could not be hired by Little Creek without the unanimous approval of the Board. (*Id.* ¶ 15, Ex. G.) On September 2, 2016, Gordon responded to Boydoh and claimed to be representing Little Creek. (*Id.* ¶ 16, Ex. H.)

12.     On September 23, 2016, Gordon filed with this Court on behalf of Little Creek an Answer, Affirmative Defenses, and Counterclaims ("Answer"). In the Answer, Gordon purports to make substantive responses to the allegations in the Verified Complaint and raises affirmative defenses on behalf of Little Creek. The Answer also makes counterclaims for Little Creek against Douglas for declaratory judgment; breach of the Amended By-Laws[3]; conversion; breach of fiduciary duty, constructive fraud and removal of a director; abuse of process[4]; and attorneys' fees.

13.     On September 23, 2016, Gordon also filed on behalf of Little Creek a Motion to Disqualify Plaintiff's Counsel. On January 4, 2017, the Court issued an Order denying the motion to disqualify Plaintiff's counsel.

14.     On October 31, 2016, Green filed, and on November 1, 2016, James filed, Answers containing affirmative defenses and counterclaims against Douglas. Despite claiming that they are each proceeding pro se, James' and Green's Answers

---

[3] Oddly, Gordon also has asserted as an affirmative defense that Little Creek and Douglas were not parties to "any valid contract." (Answer, "Sixth Defense".)
[4] This counterclaim appears to be based on Plaintiff using a Guilford County Sheriff's Deputy to serve the summons and Verified Complaint on Green at Little Creek's offices and on James at his home.

are virtually identical in all regards to the Answer filed by Gordon on behalf of Little Creek.

15. On November 15, 2016, Douglas filed Plaintiff's Motion to Disqualify. Gordon subsequently responded in opposition to the Plaintiff's Motion to Disqualify on behalf of Little Creek, and Douglas filed a reply in support. Plaintiff's Motion to Disqualify is now ripe for determination.

B. *Analysis and Discussion.*

16. Plaintiff moves to disqualify Gordon from representing Little Creek, and to have the Court strike Little Creek's pleadings, on two primary grounds[5]:

   a. James and Green lacked authority to retain Gordon to represent Little Creek because under the Amended By-Laws such action required the unanimous approval of James, Green, and Douglas; and,

   b. Little Creek is a nominal party only to this action and lacks standing to defend itself against the derivative claims raised by Douglas in this lawsuit.

   The Court will address these grounds in turn.

17. "Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling

---

[5] Plaintiff also moves to disqualify Gordon on the grounds that he is prohibited from simultaneously representing Little Creek and James and Green in this lawsuit by North Carolina Rules of Professional Conduct 1.7 and 1.13(g). Plaintiff contends that despite James' and Green's claims that they are representing themselves pro se, the nearly identical nature of the "filed motions and pleadings confirm that opposing counsel is attempting to represent both Little Creek" and James and Green. (Pl.'s Br. Supp. Mot. Disqualify 18.) Since the Court concludes that Gordon must be disqualified from representing Little Creek for other reasons, it need not reach this issue.

on a motion to disqualify will not be disturbed on appeal." *Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) (quoting *Travco Hotels, Inc. v. Piedmont Natural Gas Co.*, 332 N.C. 288, 295, 420 S.E.2d 426, 430 (1992)).

## A. James and Green lacked authority under the Amended By-Laws to retain Gordon as counsel for Little Creek.

18. Plaintiff contends that hiring counsel to represent Little Creek is a corporate action that required the unanimous consent of all three directors pursuant to the Amended By-Laws. Section 3.1 of the Amended By-Laws provides the Board with broad authority to manage "[t]he business and affairs of the Corporation," including the specific authority "to [ ] select and remove all [ ], agents, and employees" and "incur indebtedness for corporate purposes." Sections 3.7 and 3.8 unambiguously require the unanimous consent and agreement of Douglas, James, and Green to act for Little Creek.

19. Plaintiff relies on this Court's decision in *Battles v. Bywater, LLC*, 2014 NCBC LEXIS 54, *6-7 (N.C. Super. Ct. 2014) in support of its argument. In *Battles*, the plaintiff Chad A. Battles ("Battles") and James Rogers ("Rogers") were each 50% owners and member-managers of two separate LLCs, Bywater and Agiqua (collectively "the LLCs"). *Id.* at *1-2. Bywater had a written operating agreement that required majority approval of the members to take action for the corporation. *Id.* at *13-15. Agiqua did not have an operating agreement. *Id.* at *2. Battles and Rogers got into a dispute regarding the management of the businesses, and Rogers hired the Asheville Law Group ("ALG") to represent him in the dispute.

*Id.* at *3-4. Subsequently, Battles filed a lawsuit against the LLCs alleging "numerous conflicts regarding the management and operation" of both companies and seeking judicial dissolution and the appointment of a receiver. *Id.* at *4-5. In response, Rogers terminated ALG as his personal counsel and hired them on behalf of the corporate defendants to defend the lawsuit and assert counterclaims against the plaintiff. *Id.* at *5. Battles moved to disqualify ALG because Rogers lacked authority to hire counsel for the LLCs. *Battles*, 2014 NCBC LEXIS 54 at *5.

20.     In *Battles*, the Honorable Louis Bledsoe granted the motion to disqualify ALG from representing the LLCs, holding that Bywater's operating agreement and the North Carolina Limited Liability Company Act required majority consent of the members to retain counsel for the corporations. *Id.* at *13-17. In addition, the court struck all filings submitted by ALG on behalf of both corporate defendants. *Id.* at *17. In reaching its conclusions, the Court cited to holdings from other jurisdictions reaching similar results. *Id.* at *16 (citing *Maitland v. Int'l Registries, LLC*, 2008 Del. Ch. LEXIS 70, at *4-5 (Del. Ch. June 6, 2008); *Caplash v. Rochester Oral & Maxillofacial Surgery Assoc., LLC*, 20 Misc. 3d 1104[A], 867 N.Y.S.2d 15, 2008 N.Y. Misc. LEXIS 3519, 2008 NY Slip Op 51216[U] (2008)).

21.     The holding in *Battles* appears to be applicable to the facts presented in this case. The Amended By-Laws place the management of the Company in the Board, and requires unanimous approval of the three directors to act for Little Creek. The decision to engage an outside attorney to represent the company in a

lawsuit is certainly the type of act that falls within the Board's authority, and accordingly requires unanimous consent of all three directors.

22.    Additionally, without limiting the Board's "general power," the Amended By-Laws specifically provide the Board authority to "select . . . agents, and employees, [and] prescribe their duties and fix their compensation" and to "incur indebtedness for corporate purposes." (Am. By-Laws § 3.1.) The selection, or employment, of an attorney to represent the company would appear to fall under these provisions. In addition, Little Creek undoubtedly is "incur[ring] indebtedness" for the legal services of Gordon, which also requires board action. *Battles*, 2014 NCBC LEXIS 54, *13-15 (finding that the decision to retain counsel "caused Bywater to incur debt 'other than in the ordinary course of business,'" an act specifically requiring majority approval of the members under Bywater's operating agreement).

23.    Little Creek contends that the unanimity requirement imposed by sections 3.7 and 3.8 of the Amended By-Laws was not intended to apply to any board action other than an attempt by two of the directors to "oust" the third from the Company. (Little Creek's Br. Resp. Mot. Disqualify 1, 6.) Little Creek supports this contention with affidavit testimony from James and Green. (James Aff. (12/5/16) ¶ 8; Green Aff. (12/5/16) ¶ 5.) The language of sections 3.7 and 3.8, however, is unambiguous in requiring unanimous approval of all three directors to take action for Little Creek, and parol evidence is not admissible to vary or explain unambiguous language in a written agreement. Parol evidence may be introduced

to interpret the contract only when its language is subject to more than one interpretation or its construction results in an ambiguity. *Root v. Allstate Ins. Co.*, 272 N.C. 580, 587-88, 158 S.E.2d 829, 835 (1968); *Thompson v. First Citizens Bank & Trust Co.*, 151 N.C. App. 704, 709, 567 S.E.2d 184, 188 (2002) ("Generally, the parol evidence rule prohibits the admission of evidence to contradict or add to the terms of a clear and unambiguous contract."). Accordingly, Little Creek cannot attempt to provide its interpretation of sections 3.7 and 3.8 through affidavit evidence.

24. Little Creek also argues that the unanimity requirement imposed by the Amended By-Laws "[w]as revised and limited by oral agreement and conduct." (Little Creek's Br. Resp. Mot. Disqualify 24.) Little Creek contends that despite the express language of sections 3.7 and 3.8, the three directors have acted for Little Creek on a majority basis, and that this effectively amended the Amended By-Laws. (*Id.* 22-24.) This argument also fails because the Amended By-Laws constituted a shareholder agreement that could only be amended by the procedure expressly provided for in the Amended By-Laws.

25. "Bylaws which are unanimously enacted by all the shareholders of a corporation are also shareholders' agreements" and fall within the meaning of a "shareholder agreement" as that term is used in the North Carolina Corporations Act. *Blount v. Taft*, 295 N.C. 472, 484, 246 S.E.2d 763, 771 (1978). "Since consensual arrangements among shareholders are *agreements* -- the products of negotiation -- they should be construed and enforced like any other contract so as to

give effect to the intent of the parties as expressed in their agreements." *Id.* "[A] shareholders' agreement may not be altered or terminated except as provided by the agreement, or by all parties, or by operation of law" and common law rules regarding amendment of agreements apply only "[i]n the absence of a valid provision in the charter or bylaws controlling amendment . . . ." *Id.* at 486, 246 S.E.2d at 772. Following these principles, the Court in *Blount* held that when a corporation's bylaws constitute a shareholders' agreement, such an agreement may be amended only as provided in those bylaws:

> We hold, therefore, that if a shareholders' agreement is made a part of the charter or bylaws it will be subject to amendment *as provided therein* or, in the absence of an internal provision governing amendments, as provided by the statutory norms.

*Id.* at 487, 246 S.E.2d at 772 (emphasis added).

26. The Amended By-Laws were adopted unanimously by Douglas, James, and Green as Little Creek's shareholders and are a "shareholder agreement." The Amended By-Laws require any further amendments be approved by the unanimous vote of the directors at a "regular or special meeting" of the Board. (Am. By-Laws § 9.1.) Little Creek has not presented evidence, and does not contend, that the Board held a meeting at which it proposed and voted on an amendment that modified the requirement of unanimous consent of the directors to act for the corporation. Rather, Little Creek's evidence, at best, suggests that Douglas, James, and Green may have acted inconsistently with the unanimity requirements on some occasions

in taking certain corporate actions. This conduct was not effective to amend sections 3.7 and 3.8.

27.    The Court concludes that pursuant to the Amended By-Laws, in order for Little Creek to retain an attorney to represent the corporation in this lawsuit, the unanimous consent of all three directors is required. James and Green, acting alone as two members of the Board, did not have authority to retain Gordon on behalf of Little Creek. Plaintiff's Motion to Disqualify should be GRANTED.

## B. Little Creek is a Nominal Defendant only and lacks standing to defend on the merits.

28.    Plaintiff also moves the Court to dismiss or strike Little Creek's "filings" in this action on the grounds that Little Creek is a nominal defendant in this action and cannot defend against Plaintiff's derivative claims on the merits.[6] Little Creek contends that Plaintiff's claims are not derivative, but rather the personal claims of Douglas against Little Creek, and that Little Creek has standing to defend itself against these claims.

29.    In North Carolina "[a] corporation is, beyond question, a necessary party to any litigation brought derivatively in its name, and is customarily captioned a nominal defendant." *Swenson v. Thibaut*, 39 N.C. App. 77, 98, 250 S.E.2d 279, 293 (1978) (citing *Underwood v. Stafford*, 270 N.C. 700, 704, 155 S.E. 2d 211, 213 (1967)). In *Swenson*, the Court recognized that:

---

[6] Plaintiff apparently contends that Little Creek's lack of standing to defend the claims is further grounds to disqualify Gordon from representing Little Creek. (Pl.'s Br. Supp. Mot. Disqualify 17.) Plaintiff, however, does not explain how the lack of standing would be grounds for disqualification of counsel, and the Court will confine its consideration of Plaintiff's argument to the question of whether pleadings filed on behalf of Little Creek should be stricken or dismissed.

The anomaly of a corporation, in whose name and right a derivative action is brought, being allowed to defend itself against itself is apparent. It is particularly apparent in the situation, such as is found in the instant case, where the alleged wrongdoers are in control of the corporation.

. . . .

[W]e hold that in an action, brought by a minority shareholder derivatively in the name and right of a corporation, to enforce rights or to seek redress accruing to the corporation, that corporation will be deemed for purposes of the litigation to be aligned as a party plaintiff (except to the extent that the corporation is an actual defendant as to an issue in the action) although for purposes of form it is designated as a nominal defendant. Accordingly, the corporation . . . may not defend itself against the derivative action on the merits and must limit its defenses, if any, to the pretrial matters proper to it. Where a corporation seeks to extend its defenses beyond those areas in which it may properly conduct them, dismissal will lie against it.

*Id.* at 99-101, 250 S.E.2d at 294; *accord Thomas v. McMahon*, 2015 NCBC LEXIS

67, *1, n. 1 (N.C. Super. Ct. 2015).[7]

---

[7] In *Swenson*, the Court recognized limited exceptions to the rule that a corporation may not defend a derivative action on the merits:

In some situations, the corporation in whose interest the derivative action is purportedly brought will have interests adverse to those of the nominal plaintiffs bringing the action derivatively, and will of necessity be more than a nominal defendant. Such situations would include an action to enjoin the performance of a contract by the corporation, to appoint a receiver, to interfere with a corporate reorganization or to interfere with internal management where there is no allegation of fraud or bad faith . . . . Additionally, certain defenses which are properly asserted before trial on the merits of the action are peculiar to the corporation alone, and may be properly raised *only* by the nominal defendant who, for purposes of those matters, ceases to be a nominal defendant and becomes an actual party defendant. These defenses would include the lack of standing of the plaintiffs to sue derivatively for reasons of insufficient representation of shareholders

30.     Here, Douglas has styled his lawsuit as one pursuing both individual and derivative claims, has alleged that he is proceeding pursuant to G.S. § 55-7-40, and alleged the prerequisites to filing a derivative action. (Ver. Compl. ¶¶ 27-29, 55-60.) Douglas alleges that James and Green, acting as directors and shareholders, *inter alia*, terminated Little Creek's CEO and COO and gave him a severance payment without the authorization of the directors or shareholders, took control of Little Creek's management without the authorization of the directors or shareholders, expended corporate funds without the authorization of the directors or shareholders, took possession of Little Creek's books and records and refused Douglas' requests for access to those records, and caused a substantial decline in Little Creek's sales and profits (*Id.* ¶¶ 17-20, 25, 26, 30-32.) The Verified Complaint raises claims for breach of the Amended By-Laws and breach of fiduciary duty against James and Green, and seeks compensatory and punitive damages from James and Green. Plaintiff also raises claims for access to Little Creek's corporate records and for the removal of James and Green as directors.

31.     "One of the clearest examples of a derivative action is a suit against the officers or directors of a corporation for mismanagement of its affairs constituting a breach of their fiduciary obligations to the corporation." Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17.02[1] (7th ed. 2015). "[U]nder North Carolina law a cause of action for a director's breach of [ ]

and a failure on plaintiffs' part to make a demand upon the board of directors.

39 N.C. App. at 100, 250 S.E.2d at 294. Little Creek has not raised any of the grounds for exception in this case.

fiduciary duties ... accrues to the corporation and not to the individual shareholder." *Gusinsky v. Flanders Corp.*, 2013 NCBC LEXIS 43, \*12 (N.C. Super. Ct. 2013). Thus, an action must be brought derivatively on behalf of the corporation against its directors for corporate mismanagement, dissipating corporate assets, or for the wrongful withdrawal and use of corporate assets. *Goodwin v. Whitener*, 262 N.C. 582, 583-84, 138 S.E.2d 232, 233-34 (1964) (holding that "[a] claim of mismanagement exists in favor of the corporation").

32.     Little Creek argues that Douglas "is actually suing Little Creek on multiple Claims for Relief for compensatory and punitive damages in excess of $25,000." (Little Creek's Br. Resp. Mot. Disqualify 14.) Little Creek's argument appears to be based on Plaintiff's inartful drafting of certain allegations in the Verified Complaint in which Plaintiff claims he "is entitled to recover damages of and from *Defendants.*" (*Id.* 15-16; emphasis added.) Little Creek's position is that since Plaintiff has used "Defendants," instead of explicitly alleging that it seeks certain damages only from James and Green, Douglas must be seeking damages from Little Creek since Little Creek is styled as a defendant in the action. Little Creek's contention is without merit.

33.     First, Plaintiff was required to name Little Creek as a Defendant for purposes of pursuing his claim for removal of James and Green as directors of Little Creek. G.S. § 55-8-09(c) ("If shareholders commence a proceeding under subsection (a), they shall make the corporation a party defendant."). Plaintiff also was required to name Little Creek as a nominal defendant in this action. *Swenson*, 39 N.C. App.

at 98, 250 S.E.2d at 293 ("A corporation is . . . a necessary party to any litigation brought derivatively in its name, and is customarily captioned a nominal defendant."). In addition, the Verified Complaint expressly identified James and Green as "Defendant[s]" and Little Creek as a "Nominal Plaintiff/Defendant." (Ver. Compl. ¶¶ 2-4.)

34.     Little Creek also argues that Douglas must be seeking damages from Little Creek because "[a] shareholder may not both sue 'on behalf of' a corporation and simultaneously sue the corporation for compensatory and punitive damages in the same suit." (Little Creek's Br. Resp. Mot. Disqualify 14.) Little Creek apparently contends that since Douglas brings individual claims in this action seeking damages for himself, he cannot also attempt to recover damages derivatively. Little Creek is incorrect in this assertion.

35.     A shareholder, under limited circumstances, may maintain a direct, individual action for an injury that directly affects the shareholder, even if the corporation also has a claim for relief arising from the same wrong. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659, 488 S.E.2d 215, 219 (1997); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395-96, 537 S.E.2d 248, 253 (2000). In order to do so, the shareholder must show (a) that he was owed a special duty by the wrongdoer or (b) that the injury suffered by the shareholder is separate and distinct from that sustained by other shareholders or the corporation itself. *Barger*, 346 N.C. at 658-59, 488 S.E.2d at 219. Shareholders may maintain derivative and individual actions simultaneously in the same litigation. *Norman*,

140 N.C. App. at 406, 537 S.E.2d at 259 ("Plaintiffs may properly pursue their claims against the individual defendants both as individual and as derivative claims."). Douglas' pursuit of damages from James and Green does not foreclose the derivative claims he raises in this lawsuit.

36. Little Creek has improperly attempted to defend the derivative claims raised by Plaintiff on the merits. Little Creek's Answer purports to raise 25 affirmative defenses on behalf of the corporation, and denies Plaintiff's allegations of misconduct and mismanagement by James and Green. (Little Creek's Answer ¶¶ 17-20, 25, 26, 30-32.) This is not the proper role of the corporation when faced with allegations of the type in this action. *Swenson*, 39 N.C. App. at 99, 250 S.E.2d at 293-94 ("The rule . . . is to the effect that where directors are charged with misconduct in office and are sought to be held accountable, the corporation is required to take and maintain a wholly neutral position, taking sides neither with the complainant nor with the defending director," quoting with approval *Solimine v. Hollander*, 129 N.J. Eq. 264, 266-67, 19 A. 2d 344, 345-46 (1941)).

37. The Court concludes that Little Creek does not have standing to defend the derivative claims raised by Plaintiff in this action, and that, in the Court's discretion, Plaintiff's motion to dismiss or strike pleadings filed on behalf of Little Creek should be GRANTED, and that Little Creek's Answer should be STRICKEN.[8]

---

[8] The Court concludes that Little Creek's Motion to Disqualify Plaintiff's Counsel, which the Court already has decided, was the type of pre-trial matter that could properly be raised by Little Creek as a nominal Defendant. *Swenson*, 39 N.C. App. at 100, 250 S.E.2d at 294.

THEREFORE, IT IS ORDERED that:

1.  The Motion to Disqualify is GRANTED, and Harry G. Gordon and the Gordon Law Offices are disqualified from representing the corporate Defendant, Little Creek, in this lawsuit.

2.  The Motion to Disqualify also is GRANTED to the extent it seeks to dismiss or strike the pleadings filed on behalf of Little Creek. Little Creek's Answer is hereby STRICKEN.

This the 8th day of February, 2017.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
For Complex Business Cases

---

Accordingly, that motion and the briefs filed on behalf of Little Creek in support of the motion shall not be stricken.